Smolenski v. Eastern Coal Dock Co.        *87 N. J. L.*

---

HELEN SMOLENSKI, RESPONDENT, v. THE EASTERN COAL DOCK COMPANY, PROSECUTOR.

Submitted December 3, 1914—Decided February 19, 1915.

1. It can fairly be held that the legislature by section 23 of the Workmen's Compensation act meant that "daily wages" should be taken to be what would be earned by working the ordinary number of hours, irrespective of enforced idleness during working hours and overtime employment.

2. Where the regular week was six days of ten hours each, and the wages twenty-five cents an hour, the hourly rate reduced to a weekly rate would be $15.

On *certiorari* to the Middlesex Pleas.

This is a workmen's compensation case. The only question is the amount of the compensation. The decedent was paid by the hour. At the time of the injury he was employed as a car rider at twenty-five cents an hour. At other times he earned twenty, twenty-two and thirty-three cents an hour. The number of hours he actually worked from June 22d, 1913, to the date of the accident, December 11th, 1913, was one thousand one hundred and thirty-nine, at twenty, twenty-five and thirty-three cents, and forty-one and one-half hours at twenty-two cents. He actually worked on one hundred and twenty-eight days.

The trial judge determined that his wages were $15 a week, that is to say, twenty-five cents an hour for ten hours a day and six days a week.

The defendant claims that his wages were not in excess of $12.40 per week by any proper calculation.

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Robert J. Bain* (*Collins & Corbin,* on the brief).

For the defendant, *John A. Coan.*

The opinion of the court was delivered by

SWAYZE, J. The statute enacts (*Pamph. L.* 1913, *p.* 313) that the term "wages" shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident; that where the rate of wages is fixed by the output of the employe, his weekly wages shall be taken to be six times his average daily earnings for a working day of ordinary length, excluding

overtime; and that this rate of weekly wages shall be calculated by dividing the total value of the employe's output during the actual number of full working days during the preceding six months by the number of days the workman was actually employed. None of these provisions are precisely applicable to this case. The reference to output naturally points to piece work, and it would be difficult to hold that work by the hour was piece work, since the earnings by the hour are fixed. The earnings by output are not fixed, but depend upon the capacity, success or good fortune of the worker. The language does, however, indicate that in a case where weekly wages are not fixed, they shall be taken to be six times the daily wages, and that the daily wages shall be the wages for a working day of ordinary length, excluding overtime. We think it may fairly be held that the legislature meant that the daily wages should be taken to be what would be earned by working for the ordinary number of hours and that the employe was not to lose by reason of enforced idleness during some of those hours, nor to gain because on some days he worked overtime.

Wages, the legislature said, must be construed to be the money rate at which the services were recompensed. What is to be considered is not the recompense in fact received, but the rate which the contract of hiring fixed, whether that rate was in fact realized for the whole time or not. We think that in an employment and a community where the regular working week was six days of ten hours each and the workman was paid twenty-five cents an hour the natural conclusion of most men, if they tried to reduce the hourly rate to a weekly rate, would be that the weekly rate was $15. The truth is there is no weekly rate, but we are forced by the statute to fix one in order to determine the compensation to which the workman or his dependents are entitled. Under this compulsion we can think of no better method.

There was evidence justifying the trial judge in finding that ten hours was a working day of ordinary length.

We find no error and the judgment is affirmed, with costs.