**MARYLAND CASUALTY CO. v. STEVENS et al.**

No. 1016.

Court of Civil Appeals of Texas. Eastland.

Nov. 18, 1932.

Rehearing Denied Dec. 16, 1932.

Dallas Scarborough, of Abilene, and Cantey, Hanger & McMahon, Warren Scarborough, and J. A. Gooch, all of Fort Worth, for appellant.

George Sergeant and E. E. Clack, both of Dallas, and T. A. Bledsoe, of Abilene, for appellees.

FUNDERBURK, J.

Frank Stevens, for an injury received by him on October 31, 1928, as the result of his horse stepping into a pipeline ditch in a public highway, and falling with and upon him, thereby breaking several ribs and crushing his chest, made claim against the Magnolia Pipeline Company, the owner of the pipe line, for damages. The claim was, on or about December 12, 1928, by compromise agreement, settled for $275; the agreed damages were paid, and a full release executed and delivered. The release purported to include any subsequently developing injury or damage. Frank Stevens, at the time of said injury, was employed as an oil lease pumper for D. E. Reading, who had provided compensation insurance in favor of his employees with Maryland Casualty Company as the insurer. Ste-

vens made no claim for compensation insurance. On February 7, 1929, he died. Afterwards his wife, Mrs. Ania B. Stevens, and his minor children, Levall Stevens, Henry Keller Stevens, and Sherwood Stevens, presented to the Industrial Accident Board a claim for compensation insurance on the ground that Stevens' death had resulted from the above-described injury. The board awarded compensation at the rate of $17.31 per week for a period of 360 weeks. In due time, and after proper notice, Maryland Casualty Company filed this suit in the district court of Taylor county to set aside the award. The defendants filed a cross-action, reasserting their claim as the legal beneficiaries of the said Frank Stevens for compensation insurance for his death. The cross-action, in addition to other necessary and proper averments, alleged, in effect, that Stevens had been in the employ of said Reading only a short while, and had not worked substantially the whole of the year immediately preceding such injury, and that the average daily wages of employees of the same class, working substantially the whole of the year immediately preceding the injury, were $5.50 per day. Compensation was claimed in a lump sum on the basis of $5.50 per day for 360 weeks, and was allowed on the basis of $5 per day for said term. From the judgment in said suit, Maryland Casualty Company has appealed.

Appellant's first proposition presents the question of whether the settlement and release by Stevens of his claim for damages against the Magnolia Pipeline Company precludes the right of the appellees as his legal beneficiaries to recover compensation insurance for his death resulting from the same accident and being an outgrowth of the same injury. Material to the consideration of this question we quote the following provisions of the Workmen's Compensation Law:

"Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employee or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employee in so far as may be necessary and may enforce in the name of the injured employee or of his legal beneficiaries or in its own name and for the joint use and benefit of said employee or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employee or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employee or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employee or his beneficiaries and the approval of the board, upon a hearing thereof." R. S. 1925, art. 8307, § 6a.

"The following words and phrases as used in this law shall, unless a different meaning is plainly required by the context, have the following meanings, respectively: * * * Any reference to any employe herein who has been injured shall, when the employe is dead, also include the legal beneficiaries, as that term is herein used, of such employe to whom compensation may be payable." R. S. 1925, art. 8309, § 1.

It may be conceded in the outset that, unless the Workmen's Compensation Law (R. S. 1925, arts. 8306 to 8309, as amended), makes provision to the contrary, the effect of the release given by Stevens was to cut off any right of action by the appellees against the Magnolia Pipeline Company under the death statute (i. e., R. S. 1925, arts. 4671–4678). Thompson v. Ft. Worth & R. G. R. Co., 97 Tex. 590, 80 S. W. 990, 1 Ann. Cas. 231; St. Louis S. W. R. Co. v. Hengst, 36 Tex. Civ. App. 217, 81 S. W. 832; Blount v. Gulf, C. & S. F. R. Co. (Tex. Civ. App.) 82 S. W. 305. Upon the same condition it would also seem logically to follow that appellant would thereby be cut off from any right of subrogation. From these consequences, considered in connection with the statutory provisions above, and particularly of the definition of employee to include legal beneficiaries, appellant argues that the effect of the release was likewise to cut off appellees' right to compensation insurance.

If it should be granted that the Workmen's Compensation Law has made no change in the effect of a release of a right of action at law, as such effect was declared in Thompson v. Ft. Worth & R. G. R. Co., supra, and that, because of that effect appellant can avail itself of no right of subrogation as provided for in said article 8307, § 6a, it does not necessarily follow, we think, that appellees would be precluded from their right to recover compensation insurance. In passing upon the question here presented, we shall merely assume, without deciding, that the effect of the release was such as to preclude the appellees from asserting any cause of action against the Magnolia Pipeline Company and to preclude the appellant from asserting any such cause of action under a claim of subrogation.

The Workmen's Compensation Law, in no uncertain terms, creates a cause of action for compensation insurance in favor of the legal beneficiaries of a deceased employee for the death of the employee. That cause of action, for all practical purposes, is separate and distinct from the cause of action for compensation which the same statute just as certainly creates in favor of the injured employee. Texas Employers' Ins. Ass'n v. Morgan (Tex. Com. App.) 295 S. W. 588; Texas Employers' Ins. Ass'n v. Morgan (Tex. Civ. App.) 289 S. W. 75; Milwaukee Coke & Gas Co. v. Industrial Commission, 160 Wis. 247, 151 N. W. 245, 248; 28 R. C. L. p. 783. These causes of action consist largely of common elements. They are each dependent upon the existence of the same accident, the same resulting injury, sustained in the course of employment. The only practical difference is that the employee's individual cause of action covers the full extent of the injury except his death, and the cause of action of the beneficiaries is for the death only. Notwithstanding the near approach to identity of these two causes of action, they are so distinct that the employee can, by no act or deed, release or affect the cause of action belonging to the legal beneficiaries. Such is the plain holding of the authorities above cited.

It is quite obvious that these two causes of action, distinct each from the other, are both entirely different causes of action from any existing at law, or under the death statute, against a third party in favor of the injured employee or the said beneficiaries. If the employee cannot, by releasing his cause of action, for compensation, thereby release or in any manner affect the cause of action of his beneficiaries for compensation, then how can it be contended that his release of another and different cause of action against a different person could have such effect? What reason exists, or could exist, for holding that, while a release by an employee of his cause of action for compensation cannot release or affect the cause of action of his legal beneficiaries for compensation, yet a release by the employee of another and different cause of action from that of either of these existing against an entirely different person will release the cause of action of his beneficiaries for compensation? Such a reason, if it exists, would, of necessity, have to be found in the provisions of the law itself. Certainly the law does not expressly declare any such consequence. The only reason suggested is that, unless such effect be given to the release, then appellant, while held to a liability to pay compensation, would be deprived of its right of subrogation. The argument assumes that for appellant to be deprived of its right of subrogation would be so manifestly unjust that, in order to avoid such a consequence, the law should, under such circumstances, be construed to deny the right of appellees to compensation directly contrary to the plain provision of the law. The argument is not at all convincing. The right of subrogation here involved is purely a creature of the statute. The validity of the Workmen's Compensation Law, as a legislative enactment, was not dependent upon the creation in favor of an insurer of a right of subrogation. If, therefore, under a particular state of facts, the right of subrogation is not available, it cannot properly be said that the insurer has been deprived of the right, but the right in such case simply does not exist. Reference in said section 6a of article 8307 to "employee" who has been injured, as respects the question now under consideration, cannot, by reason of the context, include the legal beneficiaries. Such is the necessary effect of the holding that the employee's release of his cause of action for compensation would not release or affect the cause of action of his legal beneficiaries for compensation. Upon these considerations we have reached the conclusion that appellant's first proposition cannot be sustained.

The conclusions above stated render it unnecessary to discuss at any length a number of other propositions which are controlled by the same principle. It follows, for instance, from what has been said, that appellant has lost no right of subrogation. The right under the circumstances either never existed or it remains unimpaired. Whether the one or the other is the case is an immaterial question in the instant suit. It is unimportant in this case that the injuries received by Stevens may have been the result of the negligence of a third party. No third party is before the court. No issue of negligence is involved. The court therefore committed no error in refusing to submit to the jury issues relating to negligence. There was no error in excluding from the evidence going before the jury the release in question, offered for the purpose of showing that appellant had lost its right of subrogation or was estopped to assert its statutory right against the negligent third party. There was no error in refusing to admit the testimony of Hicks Thompson to the effect that he had settled the claim of Frank Stevens against the Magnolia Pipeline Company and that Frank Stevens had made claim against said company. The testimony was immaterial to the issues in this case, at least as regards the purposes for which it was offered, since proof of such facts could not affect the right of the appellants to claim compensation insurance. There was likewise no error in excluding the statement of said Hicks Thompson filed with the Industrial Accident Board to the effect that Stevens had told him while the settlement negotiations between the Magnolia Pipeline Company and Stevens were going on, that he (Stevens) was not in the course of his employment at the

time he was injured, but that he was chasing a colt in a country road. The statement was, as to the appellees, hearsay, and inadmissible for that reason. There was no error in refusing to give appellee's requested special issues Nos. 3 and 4. They related to negligence of the Magnolia Pipeline Company, which, as said before, was an immaterial matter.

Other propositions urged will now be noticed briefly. The evidence clearly raised an issue for the jury as to whether the death of Stevens was the result of the accident on October 31, 1928. The same is true as to the issue of whether the injury was received by Stevens while in the course of his employment. There was no such preponderance of the evidence to show the contrary as would justify our holding that the evidence was insufficient to support the verdict of the jury.

■ Appellees' own pleading, by necessary implication, showed that the accident and consequent injury occurred in Taylor county. Appellees were not required to offer testimony to prove any fact alleged or admitted, or necessarily implied from the allegations in the plaintiff's petition. If, therefore, there was no testimony to show that the injury was received in Taylor county, as to which we do not stop to inquire, it is wholly immaterial for the reason stated.

■ The contention cannot be sustained that there was no evidence that notice of the injury was given as required by law. The law only requires notice of injury to be given "unless the association or subscriber have notice of the injury." D. E. Reading was the subscriber. Levall Stevens testified that he told said Reading about the injury to his father the next day after the accident. The injury was received on October 31, 1928, and the claim for compensation was filed with the Industrial Accident Board on April 24, 1929. The claim was therefore filed within the six months time prescribed by law.

Appellant quoted evidence on the issue of lump sum allowance in connection with its proposition, by which it was contended that there was no proof authorizing the submission of that issue to the jury. Without restating the testimony, we merely express the opinion that the evidence was sufficient to raise an issue to go to the jury.

■■ It is further insisted that there was no evidence to support the verdict of the jury wherein it was found that the average daily wage of an employee of the same class as the deceased and who had worked substantially the whole of a year immediately preceding October 31, 1928, in the same or similar employment in the same or neighboring place as that in which the deceased Stevens was working at the time of the accident, was $5 daily. It is contended that, in any case, the verdict and judgment were excessive, in that the evidence

at most supported a finding of $2.50 per day. Under the definition of average weekly wages in article 8309, § 1, as applied to the facts in evidence, the daily wages received by Stevens at the time of his injury was wholly unimportant. Had he been working for substantially the whole of the preceding year in the same kind of employment, the daily wage he was receiving at the time of the injury would have been important only as a factor in determining his average daily wage or salary during such preceding year. But, having been employed for only about three months, neither the daily wage he was receiving, nor his average daily wage was of any importance whatever, since neither could form any basis for finding the "average weekly wages" upon which compensation is required to be computed.

The "average weekly wages", were required to be determined as provided in paragraphs 2 and 5 of the definition. The only fact to be determined from evidence (all others being matters of simple computation), was "the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed." There was evidence tending to show that, throughout the year preceding the injury in question, persons were employed as oil lease pumpers in the vicinity of the place of injury. There was evidence to the effect that the Continental Oil Company, operating in the same field, paid its pumpers $150 per month. There was therefore ample evidence, we think, to support the verdict of the jury.

Appellant seems to attach importance to the fact that the $2.50 daily wage which Stevens was being paid at the time of his injury was for four or five hours' work per day, whereas the jury finding of $5 per day as the average daily wages of other employees was based upon full-time service, or at least for a greater number of hours per day. As has already been said, the actual wage per day being received by Stevens was wholly immaterial. It would therefore necessarily follow that, whether the $2.50 actual wage was paid for four or five hours' work or for ten or twelve hours' work, would likewise be immaterial. Had Stevens worked at the same employment for substantially the whole of the preceding year at $5 per day except the last day, when, by reason of a cut in wages, he received only $2.50 a day, it is clear the "average weekly wage" upon which compensation would have been computed would have been much more than the $2.50 per day he was receiving when injured. The result would have been the same had the evidence here shown that $5 per day was the prevailing wage received

by other employees except for a cut to $2.50 the last day before the injury. The evidence showed no such cut, and therefore justified the finding that the $5 rate as an average remained in force throughout the entire year.

Had Stevens been working as a pumper for appellant continuously for a year or more, it would have been immaterial that he may have been receiving $2.50 per day from appellant for four or five hours' work and an additional $2.50 from some other employer for four or five hours' work. The law expressly requires his average daily wage to be based upon what "he shall have earned in such employment" (i. e., as a pumper), whether "for the same employer or not." The law seeks to provide compensation for the loss of earning capacity in the particular class of employment, and that loss of capacity manifestly would not be shown by the amount received from a single employer for only a part time service in which a lower wage was paid because of that fact. Western Metal Supply Co. v. Pillsbury, 172 Cal. 407; 156 P. 491, Ann. Cas. 1917E, 390; In re Gillen, 215 Mass. 96, 102 N. E. 346, L. R. A. 1916A, 371.

The testimony of Levall Stevens, son of the deceased employee, and one of the beneficiaries, having a bearing upon the issue of whether the injury was sustained while in the course of employment, was properly admitted as a part of the res gestæ. Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 929; Royal Indemnity Co. v. Hogan (Tex. Civ. App.) 4 S.W.(2d) 93. We are aware of no rule which makes a distinction between interested witnesses or parties and other witnesses in testifying to facts generally admitted as a part of the res gestæ. Any question of a distinction of that kind would be one going to the weight of the evidence or credibility of the witnesses and not to its admissibility.

We also hold that admission of the testimony of Mrs. Frank Stevens regarding the custom of Frank Stevens to go from the pump to the tanks in the discharge of his duty as pumper was admissible to show, with other facts and circumstances, that he received his injury while in the course of his employment.

There certainly could have been no error in defining the word "injury" as it is defined in the Workmen's Compensation Law (article 8309, § 1), and such is the definition of which appellant complains.

If what has been said does not dispose of all of appellant's propositions, then we think any not thus disposed of are not of sufficient importance to require separate discussion, and are therefore, without further comment, overruled.

Being of opinion that there was no error, and that the judgment should be affirmed, it is accordingly so ordered.