**TEXAS EMPLOYERS' INS. ASS'N v. HAMILTON et al.**

No. 1549.

Court of Civil Appeals of Texas. Eastland.

May 1, 1936.

Rehearing Denied June 19, 1936.

Todd, Crowley & Thompson, of Fort Worth, for appellant.

Ernest Belcher and Chandler & Chandler, all of Stephenville, for appellees.

GRISSOM, Justice.

R. H. Hamilton was employed by C. W. Hobson, who operated under the trade-name of Amiesite Construction Company. Hobson was engaged in the construction of a state highway in Erath county, and Hamilton was engaged as a common laborer in building the highway, and while so employed was struck by an automobile and killed. This suit was brought by Hamilton's wife and minor children under the Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.). Under Hobson's contract for building the road, provision was made for the employment of unemployed persons in the county where the road was being constructed, the building of the road being a national recovery project, and, because of this situation, the employer, Hobson, was not allowed to per-

mit one person to work more than 30 hours during any one week, with certain exceptions which were not applicable to the deceased and need not be considered here. Hamilton was being paid 35 cents per hour for his labor. At the time of his death, Hamilton had been engaged in work on the road intermittently during a period of less than 90 days. His usual custom was to work on Thursday, Friday, and Saturday of one calendar week, and the following Monday, Tuesday, and Wednesday. He would then cease working on the highway for a period of 7 days, and upon his return to work would continue for another series of 6 working days, with Sunday intervening.

■ The sole difference between the parties to this lawsuit and the only question to be answered is what is proper to be considered in ascertaining the average weekly wages of the deceased. It is undisputed that deceased had not worked in the employment in which he was working at the time of the injury substantially the whole of the year immediately preceding the injury, nor had an employee of the same class worked substantially the whole of the year preceding the injury in the same or in a similar employment in the same or a neighboring place, and therefore first subsections 1 and 2 of § 1, art. 8309, are not applicable, but the average weekly wages of deceased are to be determined under first subsection 3 of § 1, art. 8309, which reads as follows: "When by reason of the shortness of the time of the employment of the employe, or other employe engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

Over the exceptions and objections of the appellant, appellees pleaded and proved what the deceased had earned in various occupations prior to the time of his employment by Hobson, and what the deceased earned in various employments during the weeks he was laid off while engaged in the construction of the highway. Proof was introduced showing the wages received by deceased as a common laborer at a garage, a filling station, as a dairy employee, etc. In connection with the last-named occupation, appellees were permitted to prove what the deceased was paid in addition to money by being furnished a house in which to live, lights, water, fuel, cows, feed, transportation, etc. The evidence, if admissible, with reference to the combined earnings of the deceased from these various employments, together with the amount paid him by Hobson, authorized the conclusion of the court announced in the judgment that "the average weekly wages of the deceased * * * was $20 per week," and authorized the fixing of the compensation due appellees at $12 per week for the period of 360 weeks. A full working day on this job was 10 hours; a week, 6 days. Hamilton was paid 35 cents per hour. His weekly earnings, if employed for full time, would have been $21.

The questions to be determined are: (1) Under the facts and circumstances of this case, should the court have considered testimony showing the earnings by the deceased as a common laborer in other occupations in . determining the average weekly wage of deceased under first subsection 3 of section 1, art. 8309, R.S.1925? (2) What effect, if any, upon the finding of the average weekly wage is had by reason of the fact that the deceased was paid by the hour and permitted to work only approximately half the time for Hobson?

In the case of Maryland Cas. Co. v. Stevens, 55 S.W.(2d) 149, 153, this court, in an opinion by Justice Funderburk, said:

"The law seeks to provide compensation for the loss of earning capacity in the particular class of employment, and that loss of capacity manifestly would not be shown by the amount received from a single employer for only a part time service in which a lower wage was paid because of that fact. Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 P. 491, Ann.Cas.1917E, 390; In re Gillen, 215 Mass. 96, 102 N.E. 346, L.R.A.1916A, 371."

"A policy requiring payment for total disability ordinarily is not one of indemnity against loss of income but against loss of capacity to work." Great So. Life Ins. Co. v. Johnson (Tex.Com.App.) 25 S.W.(2d) 1093, 1097.

"The purpose of the statute is to give compensation for loss of earning power." Anderson v. Roberts-Karp Hotel Co. et al., 171 Minn. 402, 214 N.W. 265, 266.

"The purpose of the statute was to protect the injured employee and his family in case of loss of power to earn money.

It should be liberally construed." Jones v. Davis et al., 246 Ky. 293, 54 S.W.(2d) 681, 683.

"The evident purpose of the act is to give the dependents what they have lost." Frink Dairy Co. v. Industrial Commission of Colorado, 78 Colo. 71, 239 P. 727, 728.

Fidelity Union Cas. Co. v. Carey (Tex. Civ.App.) 38 S.W.(2d) 169, 171, in which the court said:

"We have found no Texas case that has undertaken to decide how the weekly wage should be apportioned or determined where the employee immediately preceding and at the time of the injury was enagaged in the service of two different employers or in two different occupations. In some states, where the employee is regularly engaged in two different occupations or is working for two different employers in the same line of work, the courts hold that the employee is entitled to establish the total sum received by him from all his concurrent employers as his average weekly wage. [Citing cases.]

"The holding in these cases is based on the doctrine that the insurance provided for by the statute is intended as a substitute for the lost earning capacity of the injured employee. In other states, the rule is that the compensation should be based on the wages paid by the industry in which the injured employee was working at the time of the injury and not on the actual earning of the employee in all similar work carried on by him."

This case was affirmed by the Commission of Appeals in an opinion by Justice Sharp, found in 55 S.W.(2d) 795, 797. In that case in determining the average wages of Carey, evidence was permitted showing Carey's wages derived from his employment both as a corral boss and as a hog raiser, the latter employment being noncompensable, and the court held that Carey "could recover compensation on basis of his average annual wages received in all similar work done by him." The court, after discussing the purpose of the Workmen's Compensation Insurance Law and discussing our statutes with reference to average wage, said: "This statute is broad enough to permit the use of the wages earned from other employers during the calendar year in determining the average weekly wage, so long as the service has been rendered in the same or similar employment, that is, in the same or *similar class or grade of work,* whether for the same employer or not. For the same reason we think the service could be rendered for the same employer, but in two different enterprises or industries operated by the same manager. Here the employee, if we accept appellant's contention as true, labored concurrently in two different enterprises under the same ownership. He fed and harnessed horses in one enterprise and fed hogs in the other. There was no essential difference in the *grade of work* done in the one from that done in the other." (Italics ours.)

In this connection, also see 28 R.C.L. § 107, p. 821 and § 54, p. 759.

In considering the question of whether under the facts of this case in which the deceased was working on the highway as a common laborer, and where during the same months he was also engaged as a common laborer in other employments, the wages earned in such other employments should be considered under first subsection 3 of section 1, art. 8309, in computing the average weekly wages of deceased, we call attention to the following authorities:

In Lumbermen's Reciprocal Ass'n v. Warner et ux. (Tex.Com.App.) 245 S.W. 664, 666, it was said: "It was agreed that the deceased was earning $2.50 per day at the time of his death, but that he had been employed only a few days when his death occurred. There was no proof in evidence of what other employees in the same class of work had received immediately and prior thereto for a period of one year. The father testified, however, that the son had assisted him in the farm work, and that he could not get any one to do the work as well as his son, and that he would be compelled to pay from $2.50 to $3 per day to others to do the work which his son was doing for him. * * * It is observed from a reading of the statute that great latitude is allowed in arriving at the compensation to be awarded. Section 3 permits the resort to such means in determining the compensation as the Board, or in this case the jury, may deem just and fair to the employee and the insurer. With the privilege thus accorded to the Board or jury to determine what was fair and just to the parties, it cannot be said, in view of the evidence, that the insurer has been injured by the award made. On the other hand, it is clearly apparent that the evidence warrants the compensation awarded."

In American Emp. Ins. Co. v. Singleton (Tex.Com.App.) 24 S.W.(2d) 26, 28, the jury had found the average weekly wage of Singleton under first subsection 3 of section 1, art. 8309, and the cause was reversed upon an assignment to the effect that there was no legal evidence to establish the average weekly wage of the deceased under said subdivsion. Judge Critz in writing the opinion used the following language: "Under the record before us it is affirmatively shown that deceased worked 18 or 20 days at the employment at which he was working when he was injured at a salary of $35 per week. Nothing further is shown that would throw any light whatever as to any employment or earnings of deceased prior to the injury, except that prior to the instant employment he worked on the farm for his mother, and was a strong robust man at that time. There is no showing whatever what the value of his services to his mother were, or what she would have to pay to get others to do the work he did, as was shown in the case of Lumbermen's Reciprocal Ass'n v. Warner (Tex.Com.App.) 245 S.W. 664."

In Hartford Acc. & Ind. Co. v. Leigh, 57 S.W.(2d) 605, 606, this court in an opinion by its then Chief Justice Hickman, where the pleadings and evidence showed the injured employee to have been engaged in various capacities at varying wages in the oil industry, said: "The only subsection which could be applied under the pleadings is subsection 3. It may be that, had the facts been fully developed, with reference to claimant's employment, the length of time in the different employments, and the wages received at all times, that, under the holding of Petroleum Casualty Co. v. Williams, supra [(Tex.Com.App.) 15 S.W. (2d) 553] the average weekly wages could have been computed under that subsection."

In Texas Emp. Ins. Ass'n v. Van Pelt (Tex.Civ.App.) 68 S.W.(2d) 514, 515, 516, the judgment of the trial court was reversed because, in the manner the issue of average weekly wages was submitted to the jury under subdivision 3, the jury was restricted in its consideration to the wages the injured employee had received at and just prior to the injury, instead of permitting the jury to consider all pertinent testimony that might enable them to find what was just and fair to the parties; the court said: "The language 'in any manner which seems just and fair' fixes a general but not an arbitrary rule for computing 'average weekly wages.' Such wage should be ascertained from all the facts and circumstances pertinent to such issue in order to impartially determine the compensation in a manner legally fair and just. The court committed error in limiting the jurors in their consideration of an average weekly wage fair and just to the parties, to any particular fact or circumstance."

In American Emp. Ins. Co. v. Hookfin et al. (Tex.Civ.App.) 33 S.W.(2d) 801, the court, in effect, held that a common laborer and a chauffeur were employees in the same class or grade.

In Emp. Mut. Ins. Co. et al. v. Industrial Com. of Colo., 85 Colo. 374, 275 P. 939, the Supreme Court of Colorado, in discussing a statute with substantially the same provision as first subsection 3 of section 1 of article 8309 R.S. of Texas 1925, the Colorado statute (C.L. § 4421) containing the following provision for fixing the average weekly wage: "Where for any other reason said methods will not fairly compute the average weekly wage, the commission may in each particular case compute the average weekly wage of said employee * * * in such other manner and by such other method as will in the opinion of the commission, based upon the facts presented, fairly determine such employee's average weekly wage," said:

"The record discloses that the Industrial Commission proceeded according to paragraph (c) [the paragraph quoted from above] in fixing the average weekly wages of decedent.

"The Industrial Commission found, and the evidence shows, that decedent died February 5, 1928; that he came to Colorado from Nebraska in August 1927; that here he worked approximately three-fourths of the time, earning from $3 to $4 per day; that in Nebraska he worked as a mechanic of ability and farmer earning from $7 to $15 per day.

"We are of opinion that these substantial, credible, and uncontradicted facts fully justify the act of the Industrial Commission in making such award, and that said award was arrived at pursuant to the terms of paragraph (c), supra, and not in violation thereof. Therefore the judgment of the lower court is affirmed."

In Anderson v. Roberts-Karp Hotel Co. et al., 171 Minn. 402, 214 N.W. 265, the Supreme Court of Minnesota held that where a janitor, employed by three different firms, was injured while actually en-

gaged in the service of one only, he was permitted to have taken into consideration his aggregate earnings from the three different firms, and that his compensation was not restricted to the wages paid by the particular firm for which he was working at the time of his injury.

In Odom v. Galloway Coal Co., 223 Ala. 118, 134 So. 855, wherein the sole question on appeal was the amount of compensation authorized by law, the court said:

"The point raised grows out of certain additional findings of fact to the following effect: The deceased employee was an unusually active and industrious young man; during the 52-week period next before his death he worked at other employments than that for defendant, namely, rural mail carrier, secretary, Woodmen of the World, secretary, Ladies' Auxiliary, W. O. W., and insurance salesman, from all of which he derived additional earnings in excess of that paid by defendant to him as an employee in coal mining.

"The contention is that all these earnings are lost to his dependents by the hazard of his employment in the coal mines, and the spirit of the Compensation Law demands these other earnings shall be considered. Ex Parte DeBardeleben Coal Co., 212 Ala. 533, 103 So. 548 and Garrison v. Woodward Iron Co., 210 Ala. 45, 97 So. 64, are relied upon.

"One trouble (not to consider others) is, that these cases and the later case of County Coal Co. v. Bush, 215 Ala. 25, 109 So. 151, were governed by other provisions of Code, § 7551, subd. (g), covering cases where the employment has existed for a period of less than 52 weeks, in which cases the court is given some discretion in working out a just basis of compensation. * * *

"If compensation under our law was based solely on the earnings lost to dependents by reason of the employee's death, the case would be different."

We construe this decision as necessarily implying that, if under the particular facts of the case the court was permitted by the statute to exercise "some discretion in working out a just basis of compensation," as the statutes of that state did authorize where the employee had been employed in the occupation in which he was injured but a brief period of time, the court would have taken into consideration, in fixing the average weekly earnings of the decedent, his earnings as a rural mail carrier, secretary of two fraternal organizations, and insurance salesman, along with his income derived as an employee in coal mining.

In connection with the question as to the effect of the fact that deceased was paid by the hour, and only permitted to work a part of the time for Hobson upon the finding of his average weekly wage, we call attention to the following authorities: Texas Emp. Ins. Ass'n v. Bateman (Tex.Civ.App.) 252 S.W. 339, 340. In this case, the injured employee brought himself within the provision of first subsection 3 of section 1, art. 8309. The finding of the jury that his average weekly wage was the sum of $25 was approved by the court, where "the proof showed that the plant was closed down for a considerable period of time during the preceding year; it showed that appellee was employed by the hour, and that he received 35 cents per hour when he was actually engaged at work. The amount paid him on this basis during different months ranged from $110.40 to $5.40. The evidence, beyond the fact that the plant was not in operation, as above stated, does not account for these variances, or for appellee's failure to work steadily and receive substantially the same amount each month he worked."

Garrison v. Woodward Iron Co., 210 Ala. 45, 97 So. 64, 65: "It must be observed that the method provided in this subdivision is not mandatory, as it contains a proviso giving the trial court the right to determine if said method will produce just and fair results to both parties. The trial court in effect found that, owing to the brevity of the employment, the spasmodic and interrupted nature of same, due to industrial conditions then existing, the method there set forth would not furnish a just and fair basis of the average weekly earnings by the intestate, and we cannot hold, as matter of law, that the trial court was wrong in this respect."

Smoleniski v. Eastern Coal Dock Co., 87 N.J.Law, 26, 93 A. 85, held that it was not the legislative intent that the employee should "lose by reason of enforced idleness." To the same effect is the decision in the case of Rakie v. Jefferson & Clearfield Coal & Iron Co., 262 Pa. 444, 105 A. 638, and County Coal Co. v. Bush, 215 Ala. 25, 109 So. 151.

In Fleschner v. Fagg, 94 Ind.App. 685, 180 N.E. 487, where the court was considering the Indiana Workmen's Compensation Law of 1929, containing a provision comparable to our first subsection 3, § 1, art. 8309, in which the facts were that the deceased employee was a coal miner who had worked for the employer at the time of his death about two months, and who did not work every day, but only such days as the mine operated, it was held that the court, under such facts and the statute, was not confined to a consideration of the actual earnings of the deceased during that short period of time, a reduced earning being occasioned by the spasmodic and interrupted nature of the work he was engaged in due to the existing industrial conditions. Also see Lenne v. Binkley Min. Co., 97 Ind.App. 680, 187 N.E. 842, holding to the same effect. Also see Cote v. Bachelder-Worcester Co., 85 N.H. 444, 160 A. 101, 82 A.L. R. 1239; William Bros. Inc. et al. v. Grimm, 88 Colo. 416, 297 P. 1003; In re Bartoni, Adm'r (Appeal of Emp. Liability Ass'n Corp., Ltd.), 225 Mass. 349, 114 N.E. 663, L.R.A.1917E, 765; In re Gillen (Gillen v. Ocean Acc. & Guaranty Corp., Ltd.), 215 Mass. 96, 102 N.E. 346, L.R. A.1916A, 371.

Some cases apparently holding to the contrary, or construing statutes not comparable to the one here under consideration, are as follows: Mahaffey et al. v. Industrial Acc. Comm., 176 Cal. 711, 171 P. 298; Mahony Co. et al. v. Marshall (D.C.) 46 F.(2d) 539; Marshall v. Andrew F. Mahony Co. et al. (C.C.A.) 56 F.(2d) 74; Okla. City v. Arnold, 165 Okl. 294, 25 P.(2d) 651; Producers' & Refiners' Corp. v. McDougal, 166 Okl. 60, 26 P. (2d) 210. Also, see, L.R.A.1916A, p. 149, Note; 71 C.J. p. 805, 807; Schneider Workmen's Compensation Law, vol. 2 (2d Ed.) § 438, pp. 1503, 1510.

The trial was before the court without a jury. The court was not requested to file findings of fact or conclusions of law. We do not know upon what theory the case was decided. If it can be sustained upon any theory, it is our duty to do so. There are some questions as to the admissibility of evidence. We should presume the court did not consider any testimony that was inadmissible unless a consideration of such testimony was requisite to the judgment rendered.

Complaint is made that appellees were not limited to the proof of deceased's earnings during a period of 12 months preceding the accident, but that they were permitted to cover a period of 18 months. What has been said is sufficient answer to this contention. However, if such testimony was inadmissible, we believe it was harmless, because there was no material change shown in his average earnings during the first 6 months and the last 12 months of that period. We believe the purpose of the law and the precedents cited authorize the conclusion that the testimony as to the earnings of deceased in the same class or grade of work as that in which he was engaged at the time of his death, that is, as a common laborer, in other occupations, was, under the facts of this case, admissible, and justified the finding of the court as to his wages. The evidence as to the wages of deceased prior to his employment on the highway authorizes the same conclusion. Under this theory of the case the judgment was correct.

The appellant's assignments of error are overruled, and the judgment is affirmed.