**WHITMAN et ux. v. CASUALTY UNDER-WRITERS.**

**No. 1781.**

Court of Civil Appeals of Texas. Eastland.

April 22, 1938.

Rehearing Denied May 13, 1938.

Thomas & McDonald, of Big Spring, and Smith & Smith, of Anson, for appellants.

Touchtone, Wight, Gormley & Price, of Dallas, for appellee.

FUNDERBURK, Justice.

Arthur Francis (Bob) Whitman, 21 years of age, an employee of Johnson Machine Shop, whose compensation insurance carrier was Casualty Underwriters, suffered an accidental injury in the course of employment, resulting in his death. His father and mother, A. W. Whitman and Mrs. A. W. Whitman, the beneficiaries, in this suit brought by said Casualty Underwriters to set aside an unsatisfactory award of the Industrial Accident Board, filed the usual cross-action seeking recovery of compensation. Said claimants in their pleading alleged the following:

"11. That just prior to and at the time of the death of the said Bob Whitman, he was employed by the Johnson Machine Shop, six days a week, and was receiving his salary and consideration mutually agreed upon for the services he was performing by way of some cash in the sum of $1.50 per day and *certain training and practical education and instructions by, through and from his employer, the Johnson Machine Shop, as hereinafter explained in detail, such schooling and training, instructions and education being a fair and reasonable value, to the deceased, of the sum of $25.00 per week;* that the actual cash received per week in the sum of $9.00, *and the fair and reasonable value of the practical education and training and instructions and opportunities, in the sum of $25.00 per week, is the total of $34.00 per week salary, and its equivalent, and Defendants further allege that it was in contemplation of the employment that the deceased receive this instruction, practical training, and that the same was to be part of his consideration for working in said machine shop, and specifically on this point, defendants allege:*

"A. That the deceased had not worked in the position in which he was employed for substantially a whole year next preceding his death.

"B. That there are no other employees of the same kind and class in the place where the deceased was working or in the neighboring places, by which to measure the wages and rate of compensation; but that if there were, the *very nature of such employment, and the payment therefor, as hereinabove alleged, makes it impractical and impossible to use the salary or salaries, including educational training of such other employee or employees doing the same kind and class of work, as the basis of computing the rate of compensation in this cause.*

"C. That by the very nature of the wages and kind of salary and its equivalent, paid the deceased herein, it is necessary that the rate of compensation be computed upon the basis and rule of what is fair and just both alike to the plaintiff and defendants; and defendants here allege that that salary *and its estimated equivalent in educational opportunities and practical training* is $34.00 per week, and that such amount per week as a basis for computing the rate of compensation to be paid is fair and just alike to plaintiff and defendants.

"12. That the said deceased was a young man, just having arrived, prior to his death, of the age of twenty-one years, a strong, healthy, alert and intelligent young man, willing and quick to learn, and desiring to learn the trade of a skilled and trained machinist and mechanic; *that because of the fact that he was receiving and was to receive practical instructions and training from the skilled mechanics and machinists in the said machine shop, and thus obtain a practical education as machinist and mechanic, and when he became such skilled mechanic or machinist, be able to earn and receive a higher salary, than he would if he were unskilled and untrained, the main and principal consideration for which he was rendering the services to the said Johnson Machine Shop, was this practical education and training as an apprentice, and such was the contemplation of his employment;* and defendants further allege:

"A. That the said practical education, training and instructions which the said Bob Whitman was receiving can be fairly and reasonably estimated in money.

"B. And that a fair and reasonable estimate of the value of such practical educational training and instructions is $25.00 per week.

"13. Therefore, the basis of the compensation rate should be computed from all the

*circumstances and facts hereinabove alleged, and on the rate that would be just and fair both alike to plaintiff and defendants; and that, therefore, such rate of compensation should be $20.00 per week, for 360 weeks."*

To the above italicized portions of the pleadings the court sustained special exceptions. The exceptions specified a number of objections to said pleading, only one of which is deemed of sufficient merit to require discussion. That objection was "because the matters therein alleged do not constitute the proper elements or facts to be taken into consideration in determining the average weekly wage of deceased." The portion of the judgment showing the nature of the court's action on the special exceptions recites the following: " * * * and as to the defendant's cross-action, wherein the defendant pleaded as a part of the consideration alleged to have been mutually agreed upon, not only was $1.50 a day, but 'certain training and practical education and instructions by, through and from his employer, the Johnson Machine Shop,' the plaintiff excepted thereto, as shown by the record herein, and the court then and there sustained plaintiff's exception *to any and all of such allegations* in the defendant's cross-action *bearing upon the elements of training, instructions and practical education,* as the basis for computing the rate of compensation, to which action of the court then and there defendants excepted," etc. (Italics ours.)

In a nonjury trial the court awarded judgment in favor of the compensation claimants on the basis of $7 per week for 360 weeks, directed to be paid in a lump sum of $2,155. The compensation claimants have appealed.

The only ruling or action of the court assigned as a ground of error is that sustaining exceptions to the pleading as set forth in the above statement of the case.

Having regard to the distinctive functions of general and special exceptions, or demurrers, we are of the opinion that the exceptions which the court sustained are of the nature of general exceptions, rather than special exceptions. By such exceptions the judgment of the court determined a question of the substance of an asserted legal right, rather than a question of the manner or form of alleging such right. The right asserted was to have the compensation allowed on the basis of average weekly wages, which included not only

the $1.50 per day in money, but also another element claimed to consist of one or more advantages of specified value. The exception questioned the general legal right to have such other element included as a part of the average weekly wages. By the exceptions the judgment of the court was not invoked to determine that the statement of such element was not in proper form or manner. In determining, therefore, the question of the legal right of appellants to establish the amount of the average weekly wages, so as to include as a part thereof, the advantage of instruction or training, the rule regarding general exceptions, rather than special exceptions must, we think, be applied. By such rule the pleading will most strongly be construed in favor of its sufficiency, by ascribing to it every reasonable intendment.

The question presented for decision arises upon the following statutory provisions:

"When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties." Article 8309, section 1, first subsection 3, R.S.1925.

"Said wages shall include the market value of board, lodging, laundry, fuel, and other advantage which can be estimated in money, which the employee receives from the employer as part of his remuneration. Any sums, however, which the employer has paid to the employee to cover any special expenses entailed on him by the act of his employment shall not be included." Article 8309, section 1, first subsection 4.

The question at issue may be said to be this: Are the terms "other advantage" and "which can be estimated in money" in the sentence, "Said wages [average weekly wages] shall include the market value of board, lodging, laundry, fuel and other advantage which can be estimated in money, which the employee receives from the employer, as part of his remuneration," sufficiently comprehensive to include practical instruction and training given by the employer to the employee? That practical instruction and training given by an employer to an employee, particularly a young employee, may constitute "an advantage"

cannot, we think, be doubted. It is equally certain, perhaps, that such "advantage" may be a part of the "remuneration" which the employee is to receive from the employer for his work. Whether it be such or not will depend, of course, upon the terms of the contract of employment. Whether the contract actually so provides involves a question of evidence or construction of a contract, but not of pleading.

But granting the "advantage" as a part of the "remuneration," according to the allegations, can such advantage or part of the remuneration be estimated in money? This, it may be admitted, is a more debatable question. "It is obvious," counsel for appellee argues, "that the value of education, training and the like cannot be estimated in money. For example, how can the advantage of a legal education or medical education or of an engineering education be estimated in money? In 1935 a graduate of a Class-A law school, with a good record, who had previously received the B.A. and M.A. Degrees with good records and who had practiced law six years, came into our office and wanted to go to work for $25.00 per month. He had been doing some work in the oil fields as a rough-neck. Obviously, he could make much more money as a rough neck than he could as a lawyer. It would be absurd to attempt to place a money valuation on his legal education." If the premise upon which this argument evidently proceeds should be accepted, it is undoubtedly good argument. If the "advantage" or part "remuneration" alleged was intended to mean the money value of benefits expected to accrue in after-life to the employee, the argument would perhaps be unanswerable. It must be admitted that there are some expressions in the pleadings, interspersed with others of contrary import, which appear to give some support to the view that such was the meaning intended. This is the reason why we considered it necessary in the beginning to call attention to the nature of the exceptions as being general rather than special.

The value of an education, or a course of training, may be inestimable in dollars and cents, and yet the value of the services of a tutor or instructor—part of the means through which such education or training is accomplished—be readily capable of estimation in money. For example, suppose the young lawyer referred to in appellee's argument, upon presenting himself had stated the fact that he could get employment in another firm for $50 a month, but proposed that, if counsel's firm would employ him and agree to direct his studies and give him special instruction, he would do the same work, contemplated in the other employment, for $25 per month. On a question involving an inquiry into the amount of his remuneration, would it be unreasonable to estimate it at $25 in money and $25 in "other advantage" as a part of such remuneration, capable of being estimated in money? We think not. We are further of the opinion that, if effect be given to all reasonable intendments, and errors or inaccuracies, if any, in mere form, be disregarded, the allegations to which the exceptions were sustained were sufficient to admit proof of "other advantage" as an element of average weekly wages, within the terms of the statutes.

The proposition we think must be regarded as sound that the purposes of the workmen's compensation statutes are to provide compensation for the loss of earning capacity, rather than loss of earnings or wages. Texas Emp. Ins. Ass'n v. Hamilton, Tex.Civ.App., 95 S.W.2d 767, and authorities therein cited. In keeping with such purpose provision is made by R.S.1925, art. 8306, § 12i, Vernon's Ann.Civ.St. art. 8306, § 12i, applicable alone to minors, for considering and including expected future increase in wage-earning capacity. That cannot be done in this case, since the employee was not a minor. In order to give effect to both articles 8306, § 12i, and 8309, § 1, 1st subsec. 4, the latter is required to be construed to mean that the "other advantage" be provided for by the contract as part of the remuneration to the employee, and not merely a result of the contract.

It has also come to be recognized that the workmen's compensation statutes are to be liberally construed in favor of employees. 45 Tex.Jur. p. 363, and authorities cited. The combined operation of these rules seem to us to require the conclusion that the court erred in sustaining the exceptions. For such reason the judgment must be reversed and the cause remanded, which is accordingly so ordered.