MILLAGE, Appellant, v. CANTON TWP. et al, Respondents

(38 N. W.2d 755.)

(File No. 9069. Opinion filed July 19, 1949.)

Rehearing denied August 19, 1949.

28

**T. R. Johnson,** Sioux Falls, for Appellant.

**Stordahl, May & Boe,** Sioux Falls, for Respondents.

SICKEL, J. This is a proceeding under the Workmen's Compensation Law. William Millage was employed by Canton Township as a gravel checker on a highway project. He was injured in the course of his employment and died as a result of such injuries. A claim for compensation was presented to the Industrial Commissioner by Edith Millage, his widow, as administratrix of his estate. The claim was heard on August 18, 1947. The Industrial Commissioner submitted his opinion in writing on February 28, 1948, and formal findings of fact, conclusions of law and an award was made by his successor in office on June 11, 1948. Petition for rehearing was filed by claimant, and rehearing was granted after which the Commissioner made a final award allowing death benefits in the sum of $3,120.00, medical and hospital expense, $130.25, and denied costs to either party. The claimant appealed to the Circuit Court where the award was approved. Thereafter the claimant appealed to this court.

Compensation for injury resulting in death is four times the annual earnings of the employee. SDC 64.0402(1). Annual earnings are fifty-two times the average weekly wages (SDC 64.0102(7)), which are computed according to SDC 64.0404.

The Industrial Commissioner found that the employment of decedent was one "in which it is the custom to operate for a part of the whole number of working days in each year," and computed the average weekly wages "by multiplying the employee's average days earnings by number of days which it is customary in such employment to operate during a year, but not less than two hundred, and dividing by fifty-two;" according to SDC 64.0404(3). Appellant contends that the employment of decedent was one "in which it is the custom to operate throughout the working days of the year" and that the average weekly wages should be determined "by multiplying the employee's average days earnings by three hundred and dividing by fifty-two" according to subdivision (2) of that section.

Subdivision (3) of SDC 64.0404 "furnishes a complete scheme for determining the annual earnings in each case where the employment is such that it is the custom to operate for only a part of the working days of each year," and whether the employment is seasonal or not is immaterial. Humphreys v. Schuknecht Const. Co., 66 S. D. 112, 279 N. W. 246, 249; Larson v. Johnson, 71 S. D. 251, 23 N. W.2d 449. Neither is it necessary to establish a "custom" in order that compensation be computed under subdivision (3). "Custom" as used in this statute is not limited to its legal sense as meaning something established by common consent and uniform practice, but rather denotes something which may be expected to occur in the ordinary course of events. Here decedent was employed by the township not by a concern engaged in the business of hauling gravel for highways. He was hired as a gravel checker, and for no other purpose. The township had one project which was to gravel four miles of highway. The work commenced on May 20th, and ended on June 24th, 1947. The truckers hauled gravel on six different days during that period of time and were engaged a total of thirty-six hours. The township had no other highway gravel project that year, and if decedent had lived his employment would have ended when the project was completed. There is no evidence to support the contention that it was the custom of this township to

gravel highways throughout the working days of the year 1947. Therefore the Industrial Commissioner properly determined the compensation according to SDC 64.0404(3).

It is undisputed in this case that decedent was employed at an hourly wage. It was, therefore, necessary that the Commissioner determine the average number of hours worked by decedent per day and the wages which he was to receive in order to arrive at the amount of the average day's earnings. The Commissioner found that decedent was employed "an average of six hours per day", but the findings do not state by what method the Commissioner arrived at this average. His letter of October 27, 1948, written after the rehearing and addressed to the attorneys sheds no light on this subject. The first Industrial Commissioner determined that decedent worked a total of eighteen hours in three days and from this finding decided that decedent was employed an average of six hours per day. It appears from the evidence that decedent worked part time on May 20th, the first day; eight hours on May 31st, the second day, and commenced work on the morning of June 2d, the third day; and was injured after working three hours. The loaders and the truckers operated eight hours on that day and it is only reasonable to assume that decedent would have worked eight hours also except for the injury. To call those three hours a day, in arriving at an average number of hours per day employed, is obviously unjust. This employment was inter-mittent. We must, therefore, look to the character of the employment, the amount of work actually performed by decedent, and the amount of work for which he was hired. It is reasonable to expect that had the injury not occurred the employment of decedent would have continued until the completion of the work; that the number of hours and days of such employment, therefore, equaled those of the loaders and the truckers who hauled the gravel. Their time was approximately two hours on May 20th; eight hours on May 31st; eight hours on June 2d; four hours on June 19th; five hours on June 20th and nine hours on June 24th, a total of thirty-six hours over a period of six days averaging six hours per day. We find ourselves in the position of the Supreme

Court of New Jersey in Smolenski v. Eastern Coal Dock Co., 87 N. J. L. 26, 93 A. 85, 86, affirmed 88 N. J. L. 387, 95 A. 1079, where it was said: "The truth is there is no weekly rate, but we are forced by the statute to fix one in order to determine the compensation to which the workman or his dependents are entitled. Under this compulsion we can think of no better method."

Appellant says that the calculation of compensation should be based upon the daily rate of pay; that earnings according to SDC 64.0102(5) is "the amount of compensation for the number of hours commonly regarded as a days work for the employment in which the employee was engaged at the time of his injury * * *." She then contends that eight hours is commonly regarded as a day's work and cites in support thereof the following statutes: SDC 17.0102. "A day's labor in any manufacturing or mechanical occupation shall consist of eight hours unless there is an express agreement to the contrary This shall not apply when the agreement is for employment by the week, month, or year." SDC 17.0103. "No employee of the state or of any of its political subdivisions, nor of any municipal corporation shall be employed more than eight hours in any day, * * *."

The evidence shows, as we have already pointed out, that the average day's work in the employment in which decedent was engaged was six hours, and there is no evidence to the contrary. SDC 17.0102 applies only to cases in which the agreement is for employment by the day, and where there is no agreement as to the number of hours an employee shall work for a day's pay. Whether that section could be applied in determining the hours to be regarded as a day's work in cases where there is no evidence as to the average hours worked per day, we need not decide. SDC 17.0103 is a statute fixing a limitation upon the number of hours per day which a public employee may be required to work but it is not to be considered in determining the daily wage under the Workmen's Compensation Law. Humphreys v. Schuknecht Const. Co., 66 S. D. 112, 279 N. W. 246.

There was no agreed wage per hour. The man previously employed by the township as a gravel checker

was paid sixty-five cents per hour. The man who succeeded decedent at the same job was paid seventy-five cents per hour. The clerk of the township board certified to the Industrial Commissioner that his wages were seventy-five cents per hour, but this statement was afterward repudiated as a mistake. The Industrial Commissioner found that the average wage per hour was sixty-five cents and since that finding seems to be as well supported by evidence as any other finding that could have been made on the subject, we cannot disturb it.

 Appellant contends that the Industrial Commissioner and the Circuit Court erred in refusing to allow her costs. The statute on costs in compensation cases is SDC 64.0606 which reads as follows: "The fees and mileage for attending as a witness before the Commissioner shall be the same as allowed in Circuit Court. All costs incurred in the hearing before the Commissioner may be taxed against the losing party or an equitable apportionment made thereof by the Commissioner according to the facts." Under the terms of the above statute the Industrial Commissioner may tax costs against the losing party or may make an equitable adjustment of costs. It is his duty to do one or the other. Since he has not made an equitable apportionment of the costs in this case and has found no facts which would justify it, the plaintiff is entitled to her costs.

This cause is remanded to the Circuit Court with directions to allow claimant's costs, and in all other respects the judgment is affirmed.

SMITH, P.J., and ROBERTS and RUDOLPH, JJ., concur..

HAYES, J. (dissenting). I agree that SDC 64.0404(3) provides the proper basis for determining the compensation payable to the widow, Edith Millage. However, I agree with appellant in his contention that the commissioner failed to compute the compensation as the applicable law requires.

As pointed out in the majority opinion, the commissioner found that Millage worked an average of six hours a day. Two findings of the commissioner disclose the basis for this average. Finding IV is as follows:

"That said decedent, William Millage, worked for said employer in such capacity for approximately three hours on May 20, 1947—the first day of said employment. That on May 31, 1947, the second day of such employment, the decedent worked twelve hours. That on June 2, 1947, the day of the said fatal injury to the said William Millage and the third day of said employment, the decedent worked for three hours. That the total number of such hours so worked by said decedent is eighteen, an average of six hours per day, and upon this basis the Commission accordingly makes its calculations."

Part of finding VIII reads thus:

"The Commission finds that the claimant, Edith Millage, is entitled to recover from the said Canton Township, the said employer, compensation in the sum of $3,120.00 based upon two part days and one full day of employment at an average of six hours a day and at a wage rate of 65 cents an hour and on the multiplication thereof as provided by statute."

From these findings it is observed that Millage worked "one full day of employment", twelve hours on May 31, and that the average of six hours a day was arrived at by crediting but three hours of employment on the day when the injury occurred. Upon appellant's petition for review and additional evidence submitted by both parties the commissioner adhered to the amount of compensation for death as determined by the award first made. Included in his findings after review is number IV as follows:

"That the employee, William Millage, worked at an hourly rate of $.65, an average of six hours per day."

The award after review differs from the first award only in the amount of weekly payments.

None of the formal or informal decisions of the commissioner conveys to me the suggestion that the award to appellant was based upon the number of hours the truckers worked and upon the added assumption that Millage would have worked a second day of eight hours but for the injury he suffered. On the contrary, the decisions in the record are specifically confined to actual hours of work by Millage.

The point at which I differ with my colleagues stems from the failure of the commissioner to ascertain the total compensation by first determining the "average days earnings" of Millage, within the meaning of that expression as found in the cited subsection, by applying thereto the definition of "earnings" declared in SDC 64.0102(5). This term is defined as "the amount of compensation for the number of hours **commonly regarded as a days work** for the employment in which the employee was engaged at the time of his injury * * *." (Emphasis supplied.) In other words, the law does not instruct the commissioner to determine the average number of hours of actual work per day and then to multiply such number by the hourly wage or rate of pay in order to ascertain "earnings" as defined above.

It seems altogether clear to me that the commissioner was first required to decide and find "the number of hours commonly regarded as a days work" for a gravel checker, the employment in which Millage was engaged at the time of his injury. In deciding this important item the amount of time actually put in at the job by Millage and the truckers is immaterial. At the outset, with a given hourly wage, the yardstick provided by the subsection last cited, and not the average number of hours Millage and the truckers worked for three or six days, was to be employed by the commissioner before he began multiplying as required by the law to arrive at the annual earnings and total compensation for death. By ignoring the quoted phrase the difficulties of the commissioner may readily multiply. On the basis of computation as here applied the annual earnings of a checker working for 65¢ an hour and injured at the close of a single days work of ten hours, if that number of hours was ordinarily looked upon as a days work for a checker, would be $1300 or ten times the amount of such earnings, computed without regard to an ordinary days work, in the event of an injury, after but one hours work, to a checker at a graveling job and at the same hourly rate in the same county but across the township line. If Millage had been killed at the end of the second day on which he worked his average days hours would have been at least seven and one-half with total compensation

of not less than $3900 for death. Other suppositions would but emphasize the trouble to be encountered if the commissioner does not adhere to the rule prescribed by SDC 64.0102-(5). The law allows to the commissioner no broad range or latitude in making awards of compensation in behalf of workmen of the same general class. Nor do I find in the applicable provisions of our code justification for a variety of standards depending upon the extent of the particular road project and whether the employer of a gravel checker be a city, township, county or the state.

Much testimony received at the hearings, both initial and review, relates to the time of day on the various days when the truckers went to their hauling job and the hour when hauling usually ceased on days both before and after the time when Millage suffered the fatal injury. From this testimony it is clear that the checker was required to be at his post some time before the first truck load reached the place of unloading and to remain thereat until the last load for the day had been checked out. It is a fair inference from all of the testimony respecting hours of work that the checker worked on each day at least half an hour longer than did the truckers. Further, there is ample proof to support a finding that an ordinary and usual days work for a trucker is nine hours. Other testimony on behalf of Canton township, submitted at the review hearing, tends to establish that from six to seven hours is an ordinary days work for truckers on a graveling job for a township. In this case it is shown that the hours of work per day by the checker and haulers were determined not by the township board but by the parties who had contracted to haul the gravel.

In Humphreys v. Schuknecht Construction Co., 66 S. D. 112, 279 N. W. 246, this court applied to the case of a gravel trucker the quoted definition of "earnings", then subdivision 7 of § 9461, Rev. Code 1919. It is there stated:

"Respondent testified, and it is without dispute in this record, that ten hours is the basis for a day's work in the employment in which he was engaged. Applying subdivision 7 to this evidence, we think it clear that under this statute respondent's daily earnings must be determined by

multiplying the number of hours commonly regarded as a day's work in this employment, which is ten, by the amount respondent was being paid an hour, which was 50 cents. We have a result of five dollars for a day's work when figured under the terms of this statute. True, respondent was employed through the National Re-employment Office, a federal agency, and under the terms of this employment was to work a maximum of forty hours a week at a rate of 50 cents per hour, but the number of hours he was to work in any one day was not fixed. The fact that respondent was limited to forty hours a week by virtue of his employment coming through this federal agency, we believe, is immaterial, because the statute fixes the method by which a day's earnings are to be determined."

True, and as is noted in said opinion, the undisputed testimony in that case established that ten was the number of hours commonly regarded as a days work for a gravel trucker. In the instant case, however, nothing but a guess on my part would supply the missing requisite.

I think the decision here should be that the case be remanded with directions to the commissioner to ascertain the number of hours commonly regarded as a days work for the employment in which Millage was engaged and to thereupon re-compute the amount of compensation for death.