## MARYLAND CASUALTY CO. v. DRUMMOND.

### No. 3183.

Court of Civil Appeals of Texas. Beaumont.

Feb. 23, 1938.

Rehearing Denied March 9, 1938.

R. H. Mercer and H. C. Covington, both of San Antonio, for appellant.

Charles J. Lieck and Ben S. Morris, both of San Antonio, for appellee.

O'QUINN, Justice.

This case arose under the Texas Workmen's Compensation Law. Vernon's Ann. Civ.St. art. 8306 et seq. A. H. Beck Foun-dation Company was the employer, J. C. Drummond the employee, and Maryland Casualty Company the compensation insurance carrier. On August 2, 1935, appellee while in the course of his employment received an injury for which he made application for compensation before the Industrial Accident Board. Upon hearing the board made its final award and ruling, and after due notice appellee filed this suit to set aside that ruling. Appellant likewise gave due notice that it would not abide. the ruling of the board and by cross-action herein filed suit to set aside the award of the board.

There is no question as to appellee's employment, or that he was injured, nor as to the extent of his injury, nor that he was covered by insurance carried by appellant. The only thing for decision is what should be the rate of his recovery—that is, what was the average weekly wages of appellee—the basis for his compensation.

The record discloses that A. H. Beck Foundation Company was doing foundation work, operating under a PWA contract with the federal government, at what is known as State Hospital at Fort Sam Houston, San Antonio, Tex., and appellee was one of its employees; that the employees were listed as unskilled or skilled laborers by the federal authorities who had charge of approving such works, and of passing upon the classification of the employees, and of fixing their rate of pay and hours of work; that under and by their authority appellee was classed as an unskilled worker, and his pay fixed at 40 cents per hour and 30 hours per week. Appellee was working in connection with a crane machine which lifted and placed material as its operator was directed by signals. Appellee stood on the ground in view of the crane operator and directed by signals to him what and where the crane should load or unload the materials moved by it. Appellee had not complained either as to his classification as an unskilled laborer, or the pay he received for his services, but had accepted same and was so working at the time he received his injury for which compensation is sought.

He seeks to recover compensation as a skilled laborer at $1 per hour and eight hours per day. He alleged that he had not worked for his employer at such work for substantially the whole of the preceding year, but that other employees of the same class as himself had worked in the same

or similar work in the same vicinity for substantially the whole of the year immediately preceding his injury, and that such employees received for their services in such employment $1 per hour or an average daily wage of $8 per day, wherefore he was entitled to recover compensation of $20 per week. In the alternative he alleged that if he be mistaken as to other employees thus working, then in such event he was entitled to compensation based upon a fair, just, and equitable average weekly wage to both him and appellant, which he alleged to be at least the sum of $44 per week, entitling him to receive $20 weekly compensation. He fully pleaded the injuries received by him and the result thereof, and asked for compensation in a lump sum.

Appellant answered appellee's suit by general demurrer and general denial. By way of appeal from the board's award, it pleaded the grounds for setting aside the award, and specially alleged that the contract of appellee fixed his wage at 40 cents per hour and 30 hours per week. That after appellee's injury it recognized its liability and immediately began to pay him the sum of $7.20 weekly compensation, which was 60 per cent. of his weekly wage of $12 received by him under his employment contract, which he had accepted. It further specially answered admitting that appellee was totally and permanently disabled and entitled to compensation, and that it was willing to pay such compensation, but that at the time appellee was injured he was working under the PWA code and its regulations, making 40 cents per hour and 30 hours per week, which established his average weekly wage at $7.20 per week. That the PWA classification of appellee as an unskilled laborer was approved by the inspectors under said code, and that appellee was endeavoring to secure higher wages and compensation than is allowed under the law and a higher rate of pay than he was receiving under his contract of employment and was being paid and accepted by him at the time of his injury. That no consideration was received by appellee for a higher rate of pay because the insurance policy covering appellee was based upon his wage of 40 cents per hour, his actual wage at the time of his employment and when he was injured. That appellant recognized its liability to appellee because of his injury, and actually paid to him 47 weeks of compensation of $7.20 per week; that being

60 per cent. of his weekly wage at 40 cents per hour 30 hours per week as per his contract of employment.

The case was submitted to a jury upon special issues, in answer to which they found: That there was no other employee of the same class as plaintiff at the time of his injury who had worked substantially the whole of the year immediately preceding plaintiff's injury in the same or similar employment in the same or a neighboring place; that $30 was a just and fair weekly wage of plaintiff; and that the appellee was not entitled to compensation to be paid him in a lump sum. On this verdict the award of the Industrial Accident Board was set aside, and judgment was entered for appellee at the rate of $18 per week for 401 weeks, less the sum of $338.40 previously paid him.

Appellant's assignments of error against the ruling of the court sustaining appellee's special exceptions to certain portions of appellant's answer cannot be considered, for in that there is nothing in the record showing that such exceptions were ruled upon by the court. 3 Tex.Jur., § 153, p. 231; Reilly v. Birmingham, Tex.Civ.App., 53 S.W.2d 825. However, we find in the record the evidence on the matters against which the special demurrers were presented. It appears that the evidence was admitted and considered.

What we have said disposes of appellant's fourth assignment.

It is admitted that appellee's average weekly wage cannot be determined under first subdivision 1, of section 1, of article 8309, R.C.S. The jury found in answer to special issue No. 2, in effect, that such wage could not be found under first subdivision 2 of section 1 of article 8309. Then resort was had to first subdivision 3 of section 1 of said article to ascertain the weekly wage. In answer to special issue No. 3 the jury found $30 to be the weekly wage. Based on this finding, the judgment was rendered.

Appellant assigns several errors against this finding and consequent judgment. Among them are that such finding was against the overwhelming weight of the evidence bearing on that issue; and that such finding was contrary to the law, article 8309, R.C.S., and the facts.

We think these assignments must be sustained. It is without dispute that the employer, A. H. Beck Foundation Company, was operating under a PWA contract

with the federal government; that under this contract the employees were passed upon, classified, and their wages fixed and the number of hours of work per week prescribed by the government supervisors acting in connection with the project; that appellee was classed as an unskilled laborer and his pay fixed at 40 cents an hour and the hours at 30 per week; that knowing his classification, and wage and hour schedule, appellee accepted the employment and was thus working on the job when he was injured. His contention that his classification as a laborer was wrong, and his wage schedule unjust and not in accordance with that of other like employees in the vicinity, and so, in claiming compensation, he was not bound by the terms of his labor contract specified by the federal government and employer, and in force alike with all laborers in his class, is not tenable. If there were other employees in such work outside of PWA projects receiving higher pay, and working longer hours, still, we think this not material. The federal government through its PWA projects was endeavoring to alleviate the unemployment situation, and through its rules and regulations governing its aiding efforts, sought to help as many idle persons as possible, and appellee must have known this, and must be held to have accepted his employment with full knowledge of the wage and hours tendered him. The statute, article 8309, we think has direct application to the actual day wage pay, and hours per day, or week, worked in the employment in fixing the average weekly wage, not what might be had in like employment under different circumstances, or from different employers who paid a different scale. We think that where the average weekly wages of an employee cannot be found under first subdivisions 1 or 2 of section 1, of article 8309 R.C.S., and resort is had to first subdivision 3 of section 1 of said article, if the actual daily wage is known, then such wage should be taken as the basis for computation of his average weekly wage. Petroleum Casualty Co. v. Williams, Tex. Com.App., 15 S.W.2d 553; Texas Employers' Ins. Ass'n v. Russell, Tex.Civ.App., 16 S.W.2d 321, writ dismissed; Texas Employers' Ins. Ass'n v. Manning, Tex.Civ. App., 299 S.W. 534, writ dismissed. We do not think it would be fair to the compensation insurance carrier for an employee to accept employment and work at a fixed wage, and if he receives an injury in that employment while working at the agreed wage, to then claim he should have been paid more by his employer, and be permitted to assert a different classification as a laborer and higher rate wage pay, in his claim for compensation. In our opinion, to do so would open wide the gate to fictitious claims in compensation cases, and render unstable the fixing of reasonable rules and regulations in business relations.

The judgment is reversed and the cause remanded for another trial.

### On Rehearing.

COMBS, Justice.

Upon careful consideration of appellee's motion for rehearing the majority have reached the conclusion that we were in error in holding that the wage actually being received by the appellee, at the time of his injury, must be taken as the basis for computing his compensation rate. In so holding we were clearly in conflict with the Eastland Court of Civil Appeals in Texas Employers' Insurance Association v. Hamilton, 95 S.W.2d 767, writ dismissed, and with the holding of the San Antonio Court of Civil Appeals in Federal Underwriters Exchange v. Stewart, 109 S.W.2d 1031, writ dismissed.

As appears from the original opinion, appellee's weekly compensation must be fixed under section 1, first subdivision 3 of article 8309, Vernon's Ann.Civ.St. He had not been employed for substantially the whole of the preceding year, and the jury found upon ample evidence that there was not any other employee of the same class who had been working substantially the whole of the year in the same or similar employment in that vicinity. His compensation therefore was to be fixed by the trial court "in any manner which may seem just and fair to both parties." The inquiry before this court on review simply is, Did the jury abuse its discretionary powers by fixing a rate of pay which was not just and fair to the insurance company as contended by it?

The question is one which has given this court considerable trouble. The decisions of our courts have not laid down any specific rule or guide for determining just what facts may and what may not be considered in determining the just and fair wage rate contemplated by the statute. First subdivision 3, section 1, of

article 8309, is general in its provisions and clothes the Industrial Accident Board (or, as here, the court) with broad discretionary powers in considering matters that bear upon the question of a just and fair weekly wage. And no hard or fast rule can be announced that will govern in all instances. Traders & General Ins. Co. v. Bulis, Tex.Com.App., 104 S.W.2d 488, 490.

Similar facts were involved in the Hamilton and Stewart Cases, cited supra. In the Hamilton Case the insured was killed while employed as a common laborer on a WPA job at 35 cents per hour, thirty hours per week. In fixing the compensation rate under first subdivision 3, the court received in evidence for the consideration of the jury proof of the wages received by the deceased as a common laborer in various jobs prior to the time of his employment on the WPA job, as well as amounts earned by him in various occupations during the intervals when he was laid off after his employment on the WPA project. The compensation rate based on the finding of a weekly wage of $20 was affirmed. In the Stewart Case the injured employee who was employed on a WPA job which limited the amount of his work to three days per week was permitted to show his earnings in other employment in which he engaged during the days he was not working on the WPA project. A wage rate based on such evidence was affirmed.

In Texas, as in a number of other states, it has been held that the compensation statute is designed to compensate 'the injured employee, not for loss of earnings, but for loss of earning capacity. The opinion of Justice Grissom in the Hamilton Case, supra, discusses that principle and cites numerous authorities in support of the conclusion. See, also, Traders & General Insurance Co. v. O'Quinn, Tex.Civ. App., 111 S.W.2d 859.

So it would seem settled that when the subject of inquiry is a just and fair wage rate under first subdivision 3, evidence of earnings in other employment than that in which the claimant was injured is proper to be considered in determining his wage rate or "earning capacity."

What then should be the scope of such inquiry? What evidence of earning capacity is proper to be considered? For example should an employee injured while employed and working as an unskilled laborer be permitted to show that he is in fact a skilled mechanic, capable of earning a large wage in such skilled employment, and recover compensation insurance upon a wage rate fixed on that basis?

In the Bulis Case, supra, Mr. Justice Harvey, speaking for the Commission of Appeals, opinion adopted by the Supreme Court, said: "The board may hear evidence regarding what the injured employee earned the year previous to his injury, and, further, it may hear evidence bearing on any other pertinent matter which may aid it in doing what is just and fair to both the injured employee and the insurance carrier."

It seems to us that evidence to be "pertinent" to the ascertainment of the just and fair wage rate contemplated should tend reasonably to establish the capacity of the claimant to earn in the same or similar employment to that in which he was engaged at the time of his injury. We do not understand the Bulis Case to hold otherwise. We think the compensation statute clearly contemplates that the earning capacity covered by the compensation insurance shall bear a direct relationship to the capacity of the insured to earn wages in the employment in which his injury is received. For instance, it is provided that where the injured employee shall have worked in the employment in which he was working at the time of his injury for substantially the whole of the preceding year, the average daily wage which he received fixes his rate of compensation. And under first subdivision 2 the average daily wage of an employee of the same class working substantially the whole of the year in the same or a similar employment in the same or neighboring place is the measure of the compensation. Thus in both instances the compensation rate is measured by the average daily wage of an employee engaged in the same or a similar employment. And if the "earning capacity" under first subdivisions 1 and 2 is the wage paid in the same or similar employment, it would seem in keeping with the spirit of the statute, as well as logic and common sense, that a fair and just ascertainment of an injured employee's compensation rate, or "earning capacity" under first subdivision 3, should, wherever possible, likewise be based upon his capacity to earn in a similar employment to that in which he was injured. It

manifestly would not be just and fair to permit one who accepts employment and engages voluntarily in the work of a common laborer, carrying a low rate of pay, to show as a basis for compensation for an injury received in that work that he is a skilled mechanic having the capacity to earn a much higher rate of pay. It would give an employee engaged in transitory or intermittent employment an advantage not enjoyed by an employee doing a similar work in a more permanent or general employment and whose compensation would as a consequence be fixed under first subdivisions 1 or 2. And were such the rule, it would be impossible for an insurer ever to ascertain with any degree of certainty the liabilities which it assumed in issuing a policy of compensation insurance. It would, as remarked by Justice O'QUINN, open wide the gate to fictitious and fraudulent claims. It would likewise render difficult, if not impossible, the fixing of any fair schedule of premium rates as contemplated by the statute.

In considering the matter of fixing just and fair wage another question arises on the record before us, which is, where the injured employee was employed for part time work only is his weekly wage rate to be limited to his capacity to earn in similar part-time employment, or shall it be based on what he could earn by working full time? We think the authorities hereinabove cited have settled the proposition that the wage rate is to be based on the employee's capacity to earn when employed on a full-time basis. The limitation upon the hours of work under the particular contract of employment is no more conclusive in fixing the insured's earning capacity than is the wage rate being received by him. This might at first seem to be unfair to the insurer, but it is not. The premium rates are based upon the pay roll and it makes no difference in the total liability assumed by the insurer whether the pay roll is made up of the wages of a hundred men working full time or two hundred men working half time. In either instance the total premium paid for the policy is based upon the total hours worked by the employees. And so, although twice as many employees are covered on the half-time basis as on the full-time basis, each employee in such group is exposed to injury but half the time of a full-time employee, and the total liability of the insurer is the same.

With the above principles in mind, we approach the answer to the question presented in the case before us, which is, Did the trial court err in establishing $30 per week as the just and fair weekly wage of the appellee.

At the time of his injury the appellee had been employed by the A. H. Beck Construction Company for a period of 13 weeks. The job on which he was employed was the building of the foundation for a hospital at Fort Sam Houston, San Antonio, Tex., which construction job was being carried on as a WPA project, under regulations which provided a minimum wage of 40 cents per hour for common labor, and a minimum of $1 per hour for skilled labor. The hours of work were limited to 30 hours per week. During the first 11 weeks of the employment the appellee was engaged in excavating work which consisted in digging holes about 30 feet deep; the excavating being done by hand labor. The plaintiff testified that two weeks before his injury the foreman took him out of the excavation work and put him to directing the operation of steam crane which was used in drawing the dirt buckets out of the excavations, for lowering men, tools, and supplies into the holes, and for placing the steel reinforcing in the holes when they were ready for it. His job was to stand near the excavation and give the signals to the operator of the crane, place and dump the dirt bucket, and to attach to the cable the articles, such as reinforcing steel, which were let down into the holes, seeing that same were securely attached. It was his duty to watch out for the safety of all employees in connection with the operation of the crane. Appellee was paid 40 cents per hour for such work, the same amount he was paid before the change in his work. The insurance company contended that such work was common labor, while appellee contended that it was skilled labor. In addition to his own testimony appellee offered a witness who testified that he had been engaged in construction work of a similar kind for 20 or 25 years. At the time of the trial he was employed on a construction job in San Antonio as a signal man or "rigger" in connection with the operation of a steam crane; a job similar to that in which appellee was employed when injured. Witness testified that it was a

skilled job; the rate of pay being from $1 to $1.50 per hour. The witness was being paid $1.25 per hour at the time of the trial. Considerable proof was also offered showing that the appellee was a skilled mechanic, having knowledge of machinery, and that also he was a skilled electrician, and at various times before his injury worked and received $6.50 per day, and more, in that employment.

For reasons stated hereinabove, we think it was error for the trial court to permit proof of appellee's earnings as an electrician. There was no apparent similarity between the work of an electrician and that of a steam crane signal man or "rigger." The wages received by appellee in the former employment could not have been a pertinent fact tending to establish his weekly wage or "earning capacity" in the latter employment. However, we think, the error was harmless. The proof as to appellee's capacity to earn in the very kind of employment in which he was engaged when injured would have sustained the finding of a much larger wage rate than was fixed by the jury. In fact, it appears that the jury fixed his weekly wage below the very minimum wage testified to by the witnesses as the wage customarily paid in such employment. Apparently the jury fixed the wage at the minimum of $1 for a skilled employee and limited the appellee to the 30 hours per week which he was actually working. Only the appellee could complain of that limitation. So we think it clear that no injury resulted to the appellant from the reception by the trial court of the evidence concerning his earning capacity in other and different occupations.

We conclude that the trial court did not err in fixing $30 as the just and fair weekly wage of the appellee.

Our former judgment of reversal is set aside and the judgment of the trial court is affirmed.

WALKER, Chief Justice.
I concur in all conclusions of COMBS, J.

O'QUINN, Justice.
I dissent from the conclusion of my brethren that the judgment should be affirmed, and adhere to the holdings stated in the original opinion, and file same as my dissent.