## UNITED EMPLOYERS CASUALTY CO. v. MARR.

### No. 11130.

Court of Civil Appeals of Texas. Galveston.

Oct. 24, 1940.

Rehearing Denied Nov. 21, 1940.

award of the Industrial Accident Board. From a judgment for the plaintiff, defendant appeals.

Will R. Saunders, of Dallas (W. E. Johnson, of Dallas, of counsel), for appellant.

Burris & Benton, of Houston (Fred Parks, of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

This is an appeal in a workmen's compensation case, brought by appellee, S. B. Marr, to set aside an award of the Industrial Accident Board in favor of appellant, United Employers Casualty Company, and to recover compensation for total and permanent incapacity alleged to have been the result of an injury sustained by him on May 4, 1939, in the course of his employment as a plumber's helper with M. G. Herring, who carried compensation insurance with appellant.

Appellant answered by general demurrer, exceptions, and a general denial.

In answer to special issues submitted, a jury found, in effect, that appellee had sustained an accidental injury to his back on or about May 4, 1939, while engaged with another person in carrying a water heater; that the injury so received was a producing cause of his incapacity to work; that such incapacity was total and permanent and not temporary; that $30 was an amount just and fair to both parties to be computed as appellee's average weekly wage; and that manifest hardship would result unless the compensation was paid in a lump sum.

Based upon the answers to said special issues, judgment was rendered in favor of appellee and against appellant for 401 weeks' compensation at $18 per week, reduced to a lump sum.

Appellee pled and the jury found on sufficient evidence that appellee had injured his back carrying a water heater while employed by M. G. Herrin, who was engaged in constructing a house in Houston, Texas. Appellee's evidence shows that he attempted to work for several days thereafter but that his pain became so severe that he was compelled to quit work; that he then consulted a doctor and that thereafter, in August, 1939, he was placed in a hospital in Mansfield, Louisiana, where he underwent a manipulative operation of the sacroiliac region; that following said operation he was placed in a cast which he was compelled to wear for several months and that he had been unable to work since such time.

By its first and second propositions appellant contends that the court erred in refusing to give its requested Special Issues Nos. 1 and 5. Requested Issue No. 1 inquired as to whether appellee's incapacity was not caused solely from the effects of the operation performed in Mansfield, Louisiana, subsequent to said injury, and Special Issue No. 5 inquired as to the degree or percentage of the appellee's total incapacity, if any, that was not caused by said operation.

Appellee pled that, as a result of said injury, it was necessary that a manipulative operation be performed to break down certain adhesions which resulted from the effects of said injury and that said operation was performed under the advice and with the assistance of Dr. H. B. Curtis, the physician to whom he had gone when he was first injured and who was treating him up to the time of the trial.

The record does not show that appellee was suffering from any other disease or injury for which a sacroiliac manipulation would have been a proper treatment or that he had, at any time, sustained any injury other than the one of May 4, 1939; further, there is no evidence that the operation performed in Louisiana was for any purpose other than treatment for the injury received May 4, 1939.

■ Our courts have uniformly held that a compensable injury under the Workmen's Compensation Law includes and contemplates not only the immediate effects arising from the injury itself, but the effects of any aggravation of such injury resulting from medicinal or surgical treatment, when there is no intervening, independent cause to break the chain of causation between the new injury or aggravation and the original injury. 39 A. L.R. 1276; Kirby Lumber Co. v. Ellison, Tex.Civ.App., 270 S.W. 920; Ætna Life Ins. Co. v. Liles et al., 131 Tex. 383, 114 S.W.2d 534; Zurich General Accident & Liability Ins. Co. v. Daffern, 5 Cir., 81 F.2d 179.

■ Since appellee pled and the evidence shows that said operation was performed on appellee for the purpose of attempting to cure the effects of an injury received in the course of his employment and there is no evidence to the contrary, the action of the trial court in refusing appellant's specially requested Issue No. 1 must be sustained.

■ Appellant's contention that the court should have submitted his specially requested Issue No. 5, inquiring as to what degree or percentage of appellee's incapacity was not caused by said operation cannot be sustained. The evidence shows that appellee underwent said operation to recover from the effects of an accident sustained in the course of his employment. Any disability resulting from said operation is considered as part of the original injury and is compensable as such.

■ Further, it is now the settled law that the fact that a compensation claimant was partially incapacitated from a disease or injury sustained prior to the time he received the injury for which compensation is sought, would not prevent him from recovering compensation for the full amount, which, under the law, he was entitled to receive without reference to the disease or injury for which compensation is sought. Texas Employers' Ins. Ass'n v. Parr, Tex.Com.App., 30 S.W. 305.

Appellant assigns error in the action of the trial court in the admission of certain evidence of Dr. Denman, a medical witness for appellee, and to the manner in which the court conducted the trial during Dr. Denman's examination.

■ In answer to a question by counsel for appellant as to what he did at the time he saw appellee in June, 1939, Dr. Denman began his answer: "Well, I used the necessary procedure laid down by all teachers and authorities upon diagnosis * * *"

Before the answer was completed counsel for appellant objected on the ground that the witness' answer was too vague and indefinite; whereupon the court said: "Give the doctor time to go into details and I think he could do that."

This contention cannot be sustained. It was obviously the intention of the court to inform counsel that the witness would be permitted to complete his answer, which was entirely proper.

■ On another occasion while testifying as to what he did when appellee came to him, Dr. Denman stated: "I am kind of confused, Judge, as to what to say. It is necessary for a doctor to utilize all diagnosis."

The court then said: "Go ahead".

While appellant argues that this statement amounts to an instruction by the

court for the doctor to testify as to all diagnosis used by him, we think that the court's statement is susceptible to the construction that the doctor, having said that he was confused and having hesitated to proceed with his answer, was instructed by the court to proceed with his testimony.

■ Appellant further contends that reversible error was committed by the trial court in admitting over its objection the following testimony by Dr. Denman in answer to a question by counsel for appellee as to whether or not the future course of injuries of this kind have any bearing on whether the disability of appellant would be permanent or not. The witness answered:

"If I could just tell what I know about these sprains without violating any rules I would know how to talk."

"Q. We have to confine it to this particular case. A. I know it and I am trying hard to cooperate. Let me give my candid opinion and if I say anything wrong stop me. It is unreasonable to expect any surgeon to foretell the exact future of any sprain. It altogether depends upon the amount of damage done the tissues or organs involved and to the amount of the individual reconstructive ability * * * if that is clear. A young, vigorous, dynamic young man has more God-given power to overcome disease and injury than an old, declining undernourished man or woman. Life is likened to a man going over a hill top; a child is growing and developing * * *

"Mr. Johnson, counsel for appellant: We object to the lecture in general terms.

"A. I am not lecturing; I am answering a question, if you will not disturb my thoughts.

"Mr. Johnson: And ask that the doctor be instructed to answer the question like other witnesses.

"A. I am answering it.

"Mr. Johnson: We object to the remarks of the witness.

"Court: I think he is entitled to explain his answer.

"Mr. Johnson: We submit that an oratorical dissertation as to what life is like is wholly foreign to the question that has been asked.

"Court: That is a matter of opinion.

"A. A child's bones will put out callus forming material and heal within three or four months * * *

"Mr. Johnson: We object on the same grounds.

"Court: Overrule his objection.

"Mr. Johnson: Note our exception.

"A. A man 60 years old is not possessed of the same callus forming material and his bones sometimes never heal. All of these things a doctor must sum up and evaluate before giving an honest opinion in the case. I know of men in East Texas who were log rollers * * *

"Mr. Johnson: I object to that.

"Court. Sustain the objection."

While the statement of the witness was not entirely responsive, it was an attempt on his part to explain his answer. Further, we think that the testimony could not possibly have influenced the jury in answering the issues submitted to it.

■ It is the established rule in this state that the admission of irrelevant or immaterial evidence is not ground for reversal unless it is shown that it may have influenced the results of the verdict, or that it is probable that the testimony caused the rendition of an improper verdict. 17 Tex.Jur., 350; Epting v. Nees, Tex.Civ.App., 35 S.W.2d 717; Nance v. McClellan et al., Tex.Com.App., 89 S.W. 2d 774, 777.

While the witness, Dr. Denman, was on voir dire examination counsel for appellant asked him the following question: "All right, doctor, what are the different things that will cause what you find that way?"

Upon objection by counsel for appellee, counsel for appellant stated: "I submit to the court that I have a right to find out just what will cause all these things"; at which point the court said: "When you do you waive any objections to his competency. I am perfectly willing for you to do it if you want to make him your own witness." Counsel for appellant then stated: "We object to the ruling that it makes Dr. Denman our witness", to which the court answered, "If you gentlemen will let Doctor alone he can tell what he knows." The witness thereupon answered: "That is all I want to do." Counsel for appellant objected to the ruling of the court as being prejudicial and requested that a mistrial be declared, for the

reason that he had a right to make his objection under the law. The court stated: "You have. The privilege of voir dire does not give you the privilege to interrogate the witness independently of the voir dire with respect to his testimony. If you want to ask him any questions I am going to hold that you have waived your objection to his competency."

It is not only the court's duty to maintain orderly procedure in his court and to see that the case before him is tried without unnecessary or undue delay, but we think that, under the facts in this case, the remarks and comments of the court were not of such a character as to amount to reversible error, since they are not shown to be so prejudicial as to be fundamentally erroneous, particularly in view of·the fact that at the time they were made, counsel for appellee was insisting upon his right to continue his direct examination and counsel for appellant was insisting upon his right to continue his voir dire examination and that the remark "you gentlemen" was in all probability intended for counsel for appellee as well as counsel for appellant.

With this explanation of the court's action and the fact that there is no showing that said remarks influenced the jury in rendering its verdict, appellant's contentions must be overruled.

Appellant further assigns error in the action of the trial court in refusing to require the witness, Dr. Denman, to make a "yes or no" answer to a question propounded on voir dire examination.

The transaction complained of is reflected from the following statement of the record:

"Q. Doctor, kindly pay close attention to this question and then answer it 'yes' or 'no', and then if you want to explain * ·* * A. I will answer it this way: that I have too much respect for my profession and for medical knowledge, in treating you sick in bed or your sick child, to be restricted in any' such manner—law or no law, I want to give my opinion of this case.

"Mr. Johnson: We object to that.

"Court: You are taking him on voir dire, counsel, and when you do that you challenge him. ·

"Mr. Johnson: But we have a right that he be required to answer our questions according to the due forms of law.

We object to the refusal of the Court to compel him to answer the questions.

"Court: No, I am not compelling him to answer the question. I decline to strike the statement from the record. When you take the witness on voir dire that is a challenge, and it is cross-examination in advance. Doctor, this is the rule in the Courthouse: Where a physician examines a person for the purpose of becoming a witness he is not at liberty in giving his testimony to state what the patient said. Whether that rule is good or bad I have to operate by it. If you want to testify you will have to testify with that restriction."

The witness stated, in effect, that the question could not be answered yes or no. The trial court refused to compel the witness to so answer the question.

It is the established rule in this state that a witness may not be required to answer ·a question "yes or no" when the nature of the question is not such as to make such an answer appropriate. In such case it is his right and duty to so answer that he may state the truth and have the jury clearly understand his answer. 44 Tex.Jur. 1103; Owens v. State, Tex.Cr.App., 96 S.W. 31; Texas Central Ry. Co. v. Wheeler, 52 Tex.Civ. App. 603, 116 S.W. 83.

Appellant assigns error in the admission of the testimony of the witness, Dr. Denman, wherein he is alleged to have stated that his opinion was based at least in part on what the plaintiff told him and was not based wholly upon his objective findings.

It was stipulated by the parties that a nurse in Dr. Denman's office gave appellee three or four light treatments at the doctor's direction. Dr. Denman testified that appellee came to him for advice às to his condition; that after he made the physical examination, which followed the history taken of the case, he saw evidence that fixed his trouble from objective findings; saw his posture and his limbs, which were objective findings. He stated that he based his opinion upon everything that the case presented to him and that he then proceeded to do laboratory work, which was an objective finding, and a blood count and X-ray, ·and made physical examination. He stated that he could testify, basing his testimony upon his exclusive findings in the case, and not basing it upon one single word that appellee had told him. He stated: "I want to reiterate before

I answer the question that I can arrive at the opinion of this case wholly upon my objective findings."

It is uniformly held in this state that statements made by patients to their physician as to subjective symptoms for the purpose of qualifying such physician to testify and not for the purpose of treatment are inadmissible in evidence. It is the rule, however, that testimony of a physician as to a diagnosis made by him from objective symptoms and from his own examination of the patient, independent of what the patient may have told him, is not inadmissible, though the patient may have made self-serving declarations to him. Brotherhood of Locomotive Firemen & Enginemen v. Raney, Tex.Civ.App., 101 S.W.2d 863; Federal Underwriters Exchange v. Arnold, Tex.Civ.App., 127 S.W. 2d 972; Missouri Pacific Co. v. Baldwin, Tex.Com.App., 273 S.W. 834; Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 110 S.W.2d 108.

The court in the instant case, after having heard the testimony, found the witness to be competent to express his opinion as to his diagnosis and findings from his examination and treatment of appellee. Its ruling under these facts cannot be disturbed in the absence of a showing of abuse of his discretion. Rogers & Adams v. Lancaster et al., Tex.Com.App., 248 S. W. 660.

Appellant assigns error in the action of the court in permitting Mr. Parks, an attorney for appellee, in his opening argument to make the following statements to the jury, without taking any affirmative action: "And is it reasonable to assume that those two men would have to be off from work for two days if all they had to testify to was the fact that they took that water heater out there and that they carried it in, and that Marr didn't carry it in. Their statement was taken by the insurance company; they could have been subpoenaed and read that statement, and in five minutes time refresh their memory as to what they said; but no, we find one of them over here in the lobby of the hotel, first time he had seen that since it was signed out there, and he turned it in to his boss and he spent thirty or forty minutes there. You gentlemen will recall his testimony as to the time he spent in the lobby of that hotel."

Appellee testified that at the time he sustained his injury he was assisting another person in carrying a water heater from a delivery truck into a house. A truck driver and his assistant testified that they had delivered the water heater without assistance from appellee. There is also testimony by the truck driver and the assistant that they were being paid for their time while attending court and that one of them had spent some time in a hotel lobby at night going over his testimony with counsel for appellant.

Appellant also complains of the following argument by counsel for appellee: "They, you heard the testimony of Dr. Peyton Denman after he was finally permitted to testify after being harassed for a period of time. I wouldn't make such a broad statement, gentlemen, unless the record bore me out."

We have heretofore referred to the objections made to the testimony of Dr. Denman.

Counsel further complains of a statement made by counsel for appellee in his opening argument, to the effect that there was some attempt on the part of counsel for appellant to keep a certain medical witness' testimony out of the record. This statement obviously referred to the testimony of Dr. Denman.

While the arguments referred to were of a vigorous nature, a careful consideration of the record, including the testimony upon which the complaints against the arguments were based, leads us to the conclusion that they were justified by the record. Further, the trial court who was present and heard the arguments, the testimony on which they were based, and the facts surrounding them, put his stamp of approval on the arguments by overruling appellant's objections at the time they were made. Under the record presented and the existing situation we are constrained to hold that these assignments present no reversible error. Corn et al. v. Crosby County Cattle Co., Tex.Com.App., 25 S.W. 2d 290; Gulf Casualty Co. v. Fields, Tex. Civ.App., 107 S.W.2d 661; O'Meara v. Williams et al., Tex.Civ.App., 137 S.W.2d 66; Wells v. Henderson, Tex.Civ.App., 78 S.W.2d 683.

Appellant further contends that the court erred in overruling and in not sustaining its objection to the following arguments by counsel for appellee, for the alleged reason that said arguments were a misstatement of the law:

"Preponderance of the evidence, as that term is used in this charge, is meant the greater weight and degree of the credible evidence before you. Gentlemen, that means if one witness takes the stand and testifies to one thing and four or five or six or seven testify to something to the contrary, you can disregard all of those witnesses that testified to the contrary and accept the credible testimony that came from the witness stand from the one witness standing alone. Greater weight of the credible testimony doesn't mean the greater number * * *"

"You can have a temporary situation followed by a permanent, and then it may be followed by another temporary, or you can have a permanent situation followed by a temporary and then another permanent, but * * *".

On objection to the argument by counsel for appellant, counsel for appellee withdrew said statement.

While the argument complained of propounded an erroneous theory of law, the charge of the court correctly defines the true theory and the jury was instructed by the court to take the law of the case from the charge of the court and be governed thereby. Further, upon objection by appellant's counsel, appellee's counsel withdrew said statement from the jury and asked them to disregard it.

We do not think that the jury could have been misled by the incident, or that said statement by counsel, after having been withdrawn from its consideration, could have influenced the jury in rendering its verdict. For this reason, appellant's contentions cannot be sustained. Miller v. Winne, Tex.Civ.App., 28 S.W.2d 578; Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356; Self v. Whittler, Tex.Civ.App., 259 S.W. 628; Texas Compensation Ins. Co. v. Ellis, Tex. Civ.App., 71 S.W.2d 309.

Appellant contends that the answer of the jury to Special Issue No. 17 of the court's main charge, wherein the jury found $30 to be the average weekly wage of appellee, was not supported by the evidence and is so contrary to the great weight and overwhelming preponderance of the evidence that it shows it to be the result of bias, sympathy, prejudice, or some other influence, and should therefore be set aside and held for naught.

Appellee testified that he was making $3 per day at the time he was injured; that previous to that time the most that he had made was 50 cents per hour, eight hours per day, with the limit of 140 hours per month.

Prior to going to work for M. G. Herring, he was unemployed for a period of about three months, and prior to that time he had worked for a period of eight or nine months as a plumber's helper; prior to that time he was unemployed for about 3½ months, and prior to that time had worked for eighteen months as a plumber's helper.

The record shows that nonunion plumber's helpers during the year immediately preceding the date of appellee's injury, were paid from 50 to 75 cents per hour, and that union plumber's helpers were paid $3 per day during the first year, $5 per day during the second year, and $6 per day during the third and fourth years of their employment, based upon a full time 6-day week composed of 6-hour days.

In the case of Texas Employers Ins. Ass'n v. Hamilton, Tex.Civ.App., 95 S.W. 2d 767, an employee was killed in highway work. His hours were limited to 30 hours during any one week at the rate of 35 cents per hour. At the time of his death he had been engaged in the work intermittently during a period of less than 90 days. It was held that where it is impracticable, because of the shortness of time of employment, to compute average weekly wages, wages shall be computed in any manner which may seem fair to both parties, and that evidence as to earnings of employees as common laborers in the same class or grade of work as that in which he was engaged at the time of his death were admissible for determination of the employee's average weekly wages. Citing Article 8309, § 1, first subsections 1 to 3. This holding is followed in the case of Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356.

In the case of Traders & General Ins. Co. v. Powell, 130 Tex. 375, 110 S.W.2d 559, it is held that the wage being earned by an injured person on the date of his injury is not controlling as to his average weekly wage and that wages of other employees in the vicinity doing similar work during the year immediately preceding such injury are pertinent facts to be considered by the jury in fixing a just and fair wage rate for both parties.

In the case of Traders & General Ins. Co. v. Locklear, Tex.Civ.App., 119 S.W.2d

153, 156, no proof was offered as to what the actual earnings of plaintiff were during the year immediately preceding his injury. The testimony showed what wages were customarily paid to "rough necks" who had the same classification as plaintiff during that period, and an average weekly wage found by the jury based upon such testimony was held to be proper and supported by the evidence.

Under above facts, it is thought that the jury was justified in fixing appellee's weekly wage at $30 per week under the just and fair provision of the Workmen's Compensation Act.

We have fully considered all of the propositions presented in appellant's brief. None of them, in our opinion, show any error in the record which requires a reversal of the judgment.

Judgment of the trial court will therefore be affirmed.

Affirmed.