## LLOYDS GUARANTEE ASSUR. v. ANDERSON.
### No. 4227.

Court of Civil Appeals of Texas. El Paso.
June 18, 1942.

Rehearing Denied Oct. 1, 1942.

Chrestman, Brundige, Fountain, Elliott & Bateman, of Dallas, for appellant.

B. B. Hemphill, Jr., and Carden, Carden & Hemphill, all of Dallas, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Tom Green County. The action arose under the Workmen's

Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. Lloyds Guarantee Assurance, as insurer, sued to set aside an award of the Board in favor of the surviving widow of Z. H. Anderson, deceased. Mrs. Anderson filed a cross action. Trial was before the court and a jury. On the verdict judgment was entered on the cross action in favor of Mrs. Anderson, hereinafter designated as plaintiff. Lloyds Guarantee Assurance, hereinafter called insurer, perfected this appeal.

The cross action declared on an industrial accident policy issued to L. D. Tuttle, doing business as Crescent Battery Charger Manufacturing Company, hereinafter designated as Crescent Company. This policy was a standard form and purported to cover the employees of said Tuttle engaged in "Electrical Apparatus Mfg. N.O.C., including electrical fixtures and appliances—N. P. D. with 3643 Electric Power or Transmission Equipment Mfg.," then follows the classification of clerical employees, giving an estimated payroll, premium rate, then "3(b) Outside Salesmen, collectors and messengers (wherever engaged) who do not deliver merchandise." In the column of estimated payroll the words "If any" appear, and the premium rate of 90 cents.

Tuttle was engaged in various businesses in the City of Dallas, according to his testimony, doing business under the name of Alemite Company of North Texas, L. D. Tuttle Company, Rendezvous Stables, and Crescent Battery Charger Manufacturing Company. He said he conducted all of these businesses from one building known as 2103 North Akard Street, Dallas, Texas, except that the manufacture of the battery chargers, conducted under the name of Crescent Company, was done at 2823 Ross Avenue. On the set of books of the Crescent Company there were three employees, a shop man, and a shop foreman, working on Ross Avenue, and a bookkeeper at the office on North Akard Street. Tuttle had been engaged in the manufacture of these battery chargers since July 12, 1938. Before, same had been manufactured by a corporation organized in 1929. All stock thereof was acquired by Tuttle on July 12, 1938, and he then dissolved the corporation. In all Tuttle had some eleven or twelve employees. A shop was maintained to fabricate the electric chargers; the cases were then painted and brought to 2103 Akard Street, where they were baked in an oven maintained on said premises, then taken back to Ross Avenue and assembled, after which they were moved to the warehouse at 2103 North Akard, and therefrom were sold and distributed by employees working for L. D. Tuttle.

Tuttle testified that he conducted from the North Akard Street address under various trade names various businesses. Under the trade name of L. D. Tuttle Company, that of business sales representative of several concerns producing and selling electrical automotive equipment; that he had a contract with these various concerns whereby his remuneration consisted of a commission on sales. He said he also sold electrical chargers manufactured by him on Ross Avenue and stored at Akard Street. In making sales for these various concerns he had three or more traveling salesmen employed. These salesmen as compensation received, insofar as they sold articles for which Tuttle was sales agent, a commission; this commission was a part of the commission which Tuttle was to receive under his contract with the various concerns. The battery chargers Tuttle personally sold through his agents and traveling salesmen. These traveling salesmen, as compensation, received a commission. Anderson was one of these salesmen at the time he was killed and at all relevant times herein.

The Crescent Company was originally a corporation. While it was such Tuttle acted as its sales agent, receiving as compensation a commission on sales, a portion of which was paid to his traveling salesmen. As stated, on or about the year 1938, Tuttle acquired all the stock of such corporation and immediately dissolved same. Thereafter he conducted the business individually under the trade name aforesaid.

Deceased Anderson was first employed by Tuttle as a salesman in 1934 in the business conducted by Tuttle under the name Alemite Company of North Texas. He was discharged in January, 1936. In the latter part of that month he was re-employed by Tuttle. Under this employment he sold for Tuttle the various lines of electrical automotive equipment Tuttle was under contract to sell for others; likewise he later sold electrical chargers manufactured for sale by Tuttle, receiving as aforesaid as compensation a commission on

sales. This employment continued up to the time Anderson met his death.

■ Under the testimony of Tuttle, Anderson sold battery chargers for Tuttle. This constituted him an employee of Tuttle, using the term "employee" in a broad sense. As to whether Anderson was an independent contractor was submitted to the jury, and it was found that he was not such. The evidence was ample to sustain this finding. The contract was verbal, and Tuttle seems to have supervised the execution of the details of the work Anderson was employed to perform. The conclusion therefore follows that Anderson was an employee of Tuttle within the meaning of the Workmen's Compensation Act.

The verdict, likewise, found that the business conducted by L. D. Tuttle under the name of Crescent Battery Charger Manufacturing Company and that conducted by L. D. Tuttle under the name of L. D. Tuttle Company was one and the same business.

■ The following two propositions, we think, are well established:

(1) An employer cannot insure part only of his employees in a single business. Employers' Indemnity Corp. v. Felter, Tex.Civ.App., 264 S.W. 137, reversed on another point, Tex.Com.App., 277 S.W. 376; Texas Employers' Ins. Ass'n v. Jones, Tex.Civ.App., 70 S.W.2d 1014, writ dismissed.

(2) An employer may take out a Workmen's Compensation Policy covering employees in a separate and distinct business not covering employees in another separate distinct business. United States Fidelity & Guaranty Co. v. Bullard Gin & Mill Co., Tex.Civ.App., 245 S.W. 720; Standard Accident Ins. Co. v. Barron, Tex.Civ.App., 47 S.W.2d 380, rehearing overruled Barron v. Standard Accident Ins. Co., 122 Tex. 179, 53 S.W.2d 769.

Let us then assume, under the first proposition enunciated, that under the facts here involved Tuttle, to the extent at least to which he was engaged in the manufacture and sale of chargers, was engaged in a separate and distinct business. If this be true, then the policy covered his traveling salesmen engaged in selling such chargers and the risk arising out of such activities. The policy, by its own terms, applies to "outside salesmen, collectors and messengers (wherever engaged) who do not deliver merchandise, if any," and fixes the rate of premium therefor. Now Tuttle, likewise, through his outside salesmen, sold electrical automotive equipment which he did not manufacture. In such business Tuttle was sales agent for others. There, perhaps, is a basis for a distinction between a business of the production and sale of merchandise, and the business of acting as a sales agent for others. Under Tuttle's testimony the insurer, at the time of issuing the policy in question, was aware of the way in which Tuttle conducted his business or businesses.

■ It is clear to us in respect to the sale of electrical chargers, Anderson was covered in the policy. But the insurer argues, even if this was true, there was no basis for the assessment of compensation. Anderson's employment covered the sale of other equipment. Evidence as to the amount of his commission on the sale of chargers does not appear. However, his total earnings for several years do appear. The sale of electric battery chargers manufactured by Tuttle individually, and the sale for Tuttle of other electrical automotive equipment which Tuttle did not own, are similar businesses.

■ It is for lost capacity to work that indemnity is given an employee by the Workmen's Compensation Act. Texas Employers' Ins. Ass'n v. Hamilton, Tex. Civ.App., 95 S.W.2d 767, writ dismissed; Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399; Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356.

The jury found that at the time of his accidental death Anderson was working in the course of his employment. There was no objection to the form or manner of the submission of this issue. The only objections here briefed are as to the sufficiency of the evidence to sustain certain of the findings. We take it that the insurer does not contend that if its policy covered Anderson, he was not acting in the scope of his employment.

But to return to the contention that, absent evidence as to the amount of his earnings in the sale of battery chargers, no basis was laid for the assessment of compensation, which was in the amount of approximately $6,000.

As we have stated, it is loss of capacity to labor that is compensated for under a policy such as the one here in question.

The amount of the compensation is not affected by the inability of the employee to obtain full-time employment. The compensation is for loss of ability—not loss of money.

In the respect under consideration here we think the case of Fidelity Union Casualty Co. v. Carey, Tex.Com.App., 55 S.W. 2d 795, 796, has a direct bearing. In that case the employee was a corral boss for a teaming contractor, but part of his duties involved hauling swill for haulers. In that case it was said: "An employee hired as corral boss by a teaming contractor and injured in handling or corralling the teams is not precluded from recovering compensation by reason of the fact that some of the teams were to be used by the employee for hauling swill in connection with his employer's hog-raising enterprise, which was only an incident to his main employment, which was an insurable occupation. We find nothing in the Workmen's Compensation Act and the decisions construing that act that prohibits this construction."

As we understand the case it was held that the employee was entitled, in the estimation of his wages, to have all the money paid him by his employer taken into consideration, although some was earned in corralling teams for the purpose of hauling swill and hauling same for the feeding of hogs. We think deducible from the opinion is the fact that the activities in feeding hogs was not covered by the Compensation Act.

Now perhaps the sale of battery chargers was not the main business in which Anderson acted for Tuttle. It was, however, a business that could be insured under the Workmen's Compensation Act. This business was no more incidental to the business of selling equipment manufactured by others than the last named business was incidental to selling chargers. Part of the employees of the Crescent Company were unquestionably insured. This being the case, we think all were covered. There was a provision in the policy, in substance, that if any operations were undertaken by the employer not described or rated in the Declaration, the employer agrees to pay the premium thereon at the time of the final adjustment of the premiums in accordance with condition (c) hereof at the rates and in compliance with the rules of the Manual of Rates in use by the Company upon the date of the issuance of this policy.

In view of this provision, and in view of the fact that it is the established principle in this State that by force of law a workmen's compensation policy cannot cover part, but must cover all employees of a business, we hold that this policy covered Anderson at the time of his death. Further, that his combined earnings received from L. D. Tuttle as compensation for all his activities is a just and lawful basis for fixing the compensation due his widow on account of his death.

It is ordered that the judgment be in all things affirmed.

WALTHALL, J., not participating.