### TEXAS EMPLOYERS' INS. ASS'N v. DERRICK.
### No. 5802.

Court of Civil Appeals of Texas. Amarillo.
Nov. 17, 1947.

Rehearing Denied Dec. 22, 1947.

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo, for appellant.

Smith, Cunningham & Boling, Lubbock, Texas, for appellee.

STOKES, Justice.

This action was instituted by the appellee, C. C. Derrick, against the appellant, Texas Employers' Insurance Association, in the nature of an appeal from an order entered by the Industrial Accident Board denying him compensation under the workman's compensation law. The case was submitted to a jury and upon the verdict returned by it, finding that appellee was totally and permanently incapacitated as the result of personal injuries received by him in the course of his employment, judgment was entered by the court in favor of appellee and against appellant for compensation at the rate of $20 per week for 401 weeks under the provisions of Article 8306 et seq. of Vernon's Annotated Civil Statutes. The record shows that appellee had received three separate injuries, one on December 6, 1943, another on November 28, 1944, another on February 5, 1946, and he had instituted three suits against appellant as the compensation insurance carrier of his employer, the Standard Milling Company, located at Lubbock, all of which were consolidated and tried as one suit. In his petition upon which the case was tried, appellee attributed his incapacity primarily to his alleged injury of February 5, 1946, and sought recovery for his prior alleged injuries only in the event his claim for the injury of February 5, 1946, should be rejected. The jury attributed all of his incapacity to the alleged injury of February 5, 1946.

Appellant admitted it had issued to the Standard Milling Company a policy of compensation insurance and that the policy

was in full force and effect on the dates of the alleged injuries. It further admitted that, if appellee was an employee of Standard Milling Company and, if his employment was in an occupation which is compensable under the compensation statutes, appellee was entitled to its benefits; but it denied that appellee's employment on the dates he received the respective alleged injuries was in an occupation which is compensable under the compensation statutes. It alleged that his duty under his employment by Standard Milling Company was that of feeding cattle upon a section of land primarily devoted to farming and he was, therefore, a farm laborer and excluded from the provisions of the compensation law by the provisions of Section 2, Article 8306, R.C.S. The jury found against appellant on that issue.

Appellant duly excepted to the judgment, perfected an appeal therefrom and presents the case here upon a number of assignments of error in which it contends; first, that the evidence was insufficient to support the jury's verdict to the effect that appellee was not a farm employee and the court erred in not holding as a matter of law that he was such; secondly, it complains of the refusal of the court to submit certain special issues requested by it; thirdly, that the court erred in the manner in which appellee's average weekly wage was submitted to the jury; and fourthly, that the court erred in denying its motion to declare a mistrial, rendering judgment upon an incomplete verdict, and in overruling its motion for a new trial based upon certain argument to the jury by appellee's counsel.

In regard to the first contention, the record shows that appellee's employer, Standard Milling Company, owned and operated a milling plant about a mile northwest of the City of Lubbock and, among other things, it manufactured feed for livestock. The record indicates the milling plant was owned by Walker F. Stanton and other members of the Stanton family. The Stantons also owned a farm of several hundred acres located about a mile north of the milling plant, and upon this farm a small tract of about 25 acres was converted into feeding pens where cattle belonging to customers of the mill were fed and fattened for the market. The feed was transported from the mill to the feeding pens by trucks operated by other employees and appellee was employed in 1942 by the Standard Milling Company to feed cattle at the feeding pens. Among other crops, the Stantons raised alfalfa on the farm and upon at least one occasion they had some cattle located there. The testimony indicates that some of the alfalfa produced on the farm was fed to cattle of other customers and also that, at one time, some of the Stanton cattle were fed and fattened in the feeding pens. It was further shown by the testimony that on some occasions, when appellee's services were not required at the feeding pens, he worked on the Stanton farm, cutting and raking alfalfa, but he testified positively that he was employed to feed the cattle; that feeding cattle at the feeding pens constituted his primary duty under his employment and this was not contradicted in any way. The personal injury for which appellant recovered compensation was received by him in the feeding pens while he was engaged with another employee in lifting sacks of feed from the ground and putting them upon a wagon.

Appellant contends that the raising of cattle is a farm or ranch enterprise, not an industrial one, and that the raising of cattle cannot fairly be said to be complete until they have been fattened for the market. It argues that a farmer does not cease to be a farmer merely because he acquires livestock bred or raised by others and completes the raising process by feeding and fattening cattle thus acquired in order to prepare them for the market, nor even where he feeds and fattens cattle belonging to others. Under this theory appellant contends the appellee was engaged in farm or ranch work and was therefore excluded from the benefits of the compensation law.

We are not in accord with appellant in this contention. As we have shown, his principal employment, the work he was employed primarily to perform, and did perform, was feeding cattle. Except on one or two occasions, the cattle that were fed at the feeding pens of his employer belonged to other people. Appellee was employed, and his wages were paid, by the Standard Milling Company and, while it

is true as contended by appellant, that the process of raising and feeding cattle is an element of ranch and farm operation, yet it does not necessarily follow that every one who feeds and fattens cattle is a farmer or ranchman. While appellee's employer, the Standard Milling Company, was owned by members of the Stanton family, it was a separate enterprise from the farm which also belonged to them, and appellee's duties were confined principally to those which were necessary for the milling company to sell and deliver the products of its plant. It is not claimed that the milling company ever owned any cattle and the mere fact that the feeding pens were located upon a farm belonging to the same persons who owned the milling plant did not convert that institution into a farmer or ranchman. If the feeding pens had been located on the milling premises and connected with the buildings and improvements in which the plant and machinery were being operated, the question of whether or not the milling company was engaged in a farming or ranching enterprise could hardly arise, and the fact that the feeding pens were located approximately a mile from the plant would not change the nature of the enterprise in which it was engaged. Fidelity Union Casualty Co. v. Carey, Tex.Civ.App., 38 S.W.2d 169 (affirmed, Tex.Com.App., 55 S.W.2d 795); Holmes v. Travelers Ins. Co., Tex.Civ.App., 148 S.W.2d 270; Lloyds Guarantee Assur. v. Anderson, Tex.Civ. App., 170 S.W.2d 312.

Moreover, the fact that, on some occasions, when appellee's services were not required at the feeding pens, he worked on the Stanton farm, cutting and raking alfalfa and perhaps doing other chores, did not change the nature of his employment nor convert him into a farm or ranch laborer. As we have said, his principal employment was to feed cattle at the feeding pens of the Standard Milling Company, which undoubtedly was an industrial enterprise. Even if the two enterprises had belonged to, and were being operated by, appellee's employer, the intermittent work he performed on the farm and his work in feeding cattle at the feeding pens would be nothing more than employment in two enterprises under the same ownership and, according to the authorities above cited, he would still be entitled to the compensation insurance if he received an injury while engaged in the enterprise that was covered by the compensation insurance policy. The undisputed evidence shows he was employed to perform those duties which, as we have said, under the circumstances revealed by the record in this case, were unquestionably duties pertaining to an industrial enterprise. His work on the Stanton farm was merely incidental to his main employment. It is probably true that if he had received his injury while working on the farm, cutting and raking alfalfa, the injury would not have been compensable, but such is not the case here and, in our opinion, appellant's first contention is not well taken.

Appellant requested the court to instruct the jury that " * * * one whose primary employment, to which any other work is incident, is, by the land owner or land operator, in the production of food or other products of the earth, or the raising of stock for market, including any final fattening process reasonably incident to the completed growth for market of the stock, is a farm or ranch employee within the meaning of the compensation statute." It also requested the court to instruct the jury that the above-quoted instruction was applicable whether or not the cattle being raised were owned or bred by the landowner or land operator, if otherwise the nature of the work was sufficient to characterize it as stock raising. In connection with these instructions, it requested the court to submit to the jury the following special issue: "Do you find at the time of the alleged accident of February 5, 1946, plaintiff's employment was for the feeding of cattle upon a section of land primarily devoted to farming purposes and any other duty of plaintiff was incidental to such primary employment?"

The refusal to submit these instructions and the requested special issue constitutes the ground of appellant's second contention. The court instructed the jury that a farm or ranch employee is a person employed to plant, cultivate or harvest crops, or attend or care for livestock being raised,

belonging to or under the care of his employer. The requested instructions and special issue were not in keeping with the facts shown by the evidence. If the requested special issue had been submitted and answered in the affirmative by the jury, it would have implied that appellee was employed to feed cattle upon a section of land primarily devoted to farming purposes and any of his other duties were merely incidental thereto. As we have already said, the fact that the feeding pens of appellee's employer were located on a farm and approximately a mile distant from the mill did not change the nature of appellee's employment; nor did the fact that the section of land upon which the feeding pens were located was primarily devoted to farming purposes have anything to do with the nature of his employment. Certainly, the fact that the farm was devoted by the Stantons to farming purposes had nothing to do with the nature of the duties which appellee was employed to perform for the Standard Milling Company. In our opinion, the instruction given to the jury by the court was correct and no error was committed in refusing to submit those requested by appellant.

Appellant next complains of the manner in which the court submitted to the jury the question of appellee's average weekly wage. It instructed the jury that his weekly wage would be 1/52 part of the annual wage, if any, received by him. Appellant contends that the only method by which the court or jury was authorized to calculate the average weekly wage was under Subdivision 1, Sec. 1, of Article 8309, V.R.C.S., as amended by the act of 1943, 48th Leg., p. 279, ch. 176, par. 1. In other words, that the jury should have been instructed first to ascertain the average daily wage and then multiply it by 300, and the product would thus constitute his average annual wage. The statute referred to provides that if the employee shall have worked "substantially the whole of the year immediately preceding the injury, his average annual wage shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed." In the case of Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W. 2d 553, 555, the Supreme Court approved a holding of the Commission of Appeals to the effect that the term "substantially a year" means exactly 300 days or close to, or near to 300 days. It might be slightly more or less but it means about a year, or so near a year as to be a year for all practical purposes. It was further said that it would be placing an erroneous and unjust construction upon the statute to hold that under its provisions, an employee must work 365 days in order to work a year, and at the same time compute his average annual wage by multiplying his average daily wages by only 300. We think the unjustness of such a computation is apparent when the employee has worked substantially more than 300 days and his average daily wage and his actual annual wage are shown. It was the obvious intention of the legislature in enacting the compensation law to provide compensation to injured employees for loss of their earning capacity and that an employee's compensation should be measured by what he could earn in his employment prior to his injury.

The earlier opinions of our courts reveal some confusion as to the correct interpretation of the language employed, particularly in reference to the average annual wage and the provision that it shall consist of 300 times the average daily wage or salary which the employee earned during the days when so employed. We think it is now definitely settled, however, that the compensation should not be computed under the arbitrary method provided by Subdivisions 1 or 2 of Section 1 of Article 8309, where the actual number of days the employee worked during the preceding year are shown to be substantially more than 300, and the amount that was paid to him for his labor during that time is definitely shown. Appellee's work record was not introduced in evidence but he testified that, in his judgment, he worked as much as 325 or 330 days during the year preceding his injury. He said, "I would think I put in as much as 325 or 330 days of time. I don't remember losing—just continuously worked all the time." He said, furthermore, he thought he worked at least as much as 150 hours overtime. The evi-

dence shows without contradiction that he worked ten hours each day, seven days each week, during the year immediately preceding his injury and for several years prior thereto, for which he was regularly paid 40¢ per hour or $4 per day. It was further shown that his employer furnished him a house in which to live and that the rental value of the house was at least $35 per month. This testimony furnished ample basis for the jury to compute appellee's annual wage. The lowest number of days during the preceding year which he worked, according to his estimate, was 325 days. The 15 days overtime would make a total of 340 days. At $4 per day his actual annual wage would, therefore, amount to $1,360. The lowest estimate of the rental value of the house furnished to him by his employer was $35 per month or a total annual value of $420. This would raise his annual earnings to $1,780. One fifty-second part of the total amount reveals a quotient of $34.23, which the evidence shows without contradiction constituted appellee's weekly wage. Sixty per cent of his weekly wage amounts to $20.53, which is slightly in excess of the compensation allowed by the law and awarded to him by the judgment. In our opinion, the court correctly submitted the question of appellee's average weekly wage and the verdict and judgment awarding him $20 per week were amply supported by the testimony. Howard v. Texas Employers' Ins. Ass'n, Tex.Com.App., 292 S.W. 529; Texas Employers' Ins. Ass'n v. Storey, Tex.Com. App., 17 S.W.2d 458; Casualty Reciprocal Exchange v. Stephens, Tex.Com.App., 45 S.W.2d 143; Southern Underwriters v. Hodges, Tex.Civ.App., 141 S.W.2d 707; Texas Employers' Ins. Ass'n v. Clack, Tex. Civ.App., 112 S.W.2d 526; Traders' & General Ins. Co. v. Boysen, Tex.Civ.App., 123 S.W.2d 1016; Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68; Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553.

In the case of Texas Employers' Ins. Ass'n v. Storey, supra, it was shown the employee had worked substantially more than a year and that his actual earnings during the year preceding his death were $1,740 plus $19.86 overtime or a total year's earnings of $1,759.86. The appellant in that case contended the average weekly wage should have been computed by dividing the monthly wage by 30; then multiply by 300; then divide the result by 52. Judge Critz, speaking for the Commission of Appeals, observed that [17 S.W.2d 459], "To state the contention and calculate its results is to demonstrate the fallacy and unfairness of the contention."

In Casualty Reciprocal Exchange v. Stephens, supra, the trial court submitted the issue of weekly wage and instructed the jury that the average weekly wage would be the actual amount of earnings of the employee for the preceding twelve months, divided by 52. Judge Ryan, speaking for Commission of Appeals, said [45 S.W.2d 146], "This is in accordance with the rule announced by Judge Critz in Texas Employers' Ins. Ass'n v. Storey, Tex.Com.App., 17 S.W.2d 458." The same method of submitting the average weekly wage was used by the trial court in Norwich Union Indemnity Co. v. Wilson, supra, and it was approved by the Court of Civil Appeals of the 5th District. We are, therefore, of the opinion that the contention of appellant under this assignment of error is not supported by the law as finally determined by the decisions of our courts, and it will be overruled.

Appellant's next assignment of error complains of the action of the court in overruling its motion to declare a mistrial. The record shows that, while the trial was in progress and a few minutes before the jury was retired for an intermission, Mrs. Derrick, wife of the appellee, and six children entered the courtroom and occupied seats in the portion of the courtroom provided for spectators. Mrs. Derrick was afterwards placed upon the witness stand, stated that she was the wife of the appellee, and testified somewhat at length as to his physical condition before and after receiving his injury. In his petition appellee had alleged his necessitous condition and prayed that his compensation be paid to him in a lump sum. Appellant answered, without conceding appellee was entitled to a recovery, admitting that, should a recovery for compensation be allowed, and it was such compensation as, under the law,

could be decreed to be paid in a lump sum, such lump sum recovery might be allowed by the court without the necessity of pleading or proof upon that issue. Appellant contends that, inasmuch as the question of a lump sum settlement had thereby been eliminated from the case, it was wholly improper and worked an undue influence upon the jury for appellee's family, consisting of his wife and small children, to enter the courtroom and remain therein before the jury had retired to consider its verdict. We think it is clear from the testimony of Mrs. Derrick, and other circumstances shown in the record, that there was no ulterior motive nor any intention on the part of either the appellee, his counsel, or Mrs. Derrick to exercise any undue influence upon the jury by this incident and, in our opinion, there was no error committed by the court in overruling appellant's motion to declare a mistrial. The children ranged in ages from ten years down to one year. Mrs. Derrick made no reference to the children in her testimony. She testified in the absence of the jury that, when she was working, she took the children with her when she left home because there was no one of sufficient age and discretion with whom she could leave them and that she did not want to leave them alone. She said that was the reason she brought them with her to the courtroom. Such matters as this are left largely to the discretion of the trial judge. The record in the case does not reveal any improper motive nor that the incident resulted in any improper influence upon the jury nor that any injury resulted to appellant. In our opinion no error is revealed by this assignment.

The next complaint urged by appellant is that the court erred in rendering judgment upon an incomplete verdict. The jury did not answer Special Issue No. 9, in which it was requested to find the duration of appellee's total incapacity to labor, if any. Appellant contends that it was entitled to have this special issue answered by the jury. Special Issue No. 7 requested the jury to find whether or not appellee's total incapacity was permanent. Its answer was: "It is permanent." By Special Issue No. 8 the jury was asked, "Do you find from a preponderance of the evidence that such total incapacity, if any, is not temporary." The jury answered, "It is not temporary." Thus it will be seen that the jury found appellee's total incapacity was permanent and that it was not temporary. The only way it could have answered Special Issue No. 9 would have been either to repeat its answer to No. 7 or make a finding that would have been in conflict with it. In a situation like this, the courts will presume that if the special issue had been answered, the answer would have coincided with the answers to other issues upon the same subject.

In answering Special Issue No. 20, the jury found that the injury received by appellee on December 6, 1943, was not a contributing cause of his disability or incapacity. By Special Issue No. 21 the jury was requested to find what percentage of disability or incapacity, if any, resulted from that injury. This issue was not answered and appellant asserts that failure of the jury to answer it rendered the verdict incomplete. It is difficult to see how the jury could have found the percentage of disability when they had found the prior injury was not a contributing cause to it and, in our opinion, its failure to answer the twenty-first special issue did not render the verdict incomplete.

Practically the same situation is presented by the further complaint that the jury failed to answer Special Issue No. 35, in which it was requested to find what percentage of disability resulted to appellee from the injury of November 28, 1944. This special issue was not answered, but in answer to Special Issue No. 34 the jury had found that the injury of that date was not a contributing cause of appellee's incapacity. It has many times been held by our courts that if, because of other findings, a special issue not answered by the jury becomes immaterial, its failure to answer constitutes no obstacle to the rendition of a judgment warranted by the other findings. In our opinion, that rule is applicable to the contention presented by these assignments of error and they will therefore be overruled.

The remaining contention pertains to certain arguments made to the jury by ap-

pellee's counsel. A detail of the various phases of the argument complained of would extend this opinion beyond reasonable length. Suffice it to say that we have thoroughly examined all of the arguments complained of and, in our opinion, no reversible error is shown in the action of the court in overruling appellant's motion for a new trial in which the complaint was made. Appellant's objection to some of it was sustained and other phases of it were not complained of nor objected to except in the motion for a new trial. We do not find in it anything which, in our opinion, could not be cured by proper instructions.

We have carefully examined all of the assignments of error and contentions presented by appellant and, in our opinion, none of them reveals reversible error. The judgment of the court below will therefore be affirmed.